IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**ELLIOTT BROIDY,**
An individual

      **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　Case No.:　9:25cv81295

**HAARETZ DAILY NEWSPAPER LTD,**
An Israeli corporation (registration no. 510015449),

      **Defendant.**
_____/

## COMPLAINT

Plaintiff ELLIOTT BROIDY ("Broidy"), for his complaint against HAARETZ DAILY NEWSPAPER LTD ("Haaretz"), alleges as follows:

### PRELIMINARY STATEMENT

1. This action arises from an egregiously false and defamatory article defendant Haaretz published, and continues to publish online, concerning Mr. Broidy, a Florida civic-minded businessman who has long contributed his time, resources and advocacy to issues related to foreign policy, combating terrorism, and advancing U.S. national security. In particular, his advocacy and positions regarding the Middle East, including his past litigation with the State of Qatar, have attracted widespread approval and attention and are of significant importance for his reputation and standing, particularly in the Florida community in which he lives and works.

2. On September 1, 2025, defendant published the defamatory article, entitled "Elliott Broidy, GOP Fundraiser Pardoned by Trump, Is Secret Partner in Firm Behind pro-Qatar Campaign," which is still accessible in substantially the same form to this day. The article, as reflected in its very title, promulgates the egregiously false proposition that Mr. Broidy was

1

involved in and profited from a "pro-Qatar PR campaign" in Israel "operated" by a firm identified in the article as KOIOS—an alleged campaign that is the subject of a widely publicized criminal investigation and prosecution in Israel.  The article also deliberately and repeatedly sought to portray Mr. Broidy as a hypocrite, given his very public background as a litigant against Qatar and its agents.  Haaretz, although based in Israel, owns and controls a widely read and lucrative English-language website, Haaretz.com, which operates as separate and distinct from Haaretz.co.il, its Hebrew-language news service.  Haaretz.com specifically and primarily targets Jewish readers in the United States, including in Florida, home to the third-largest Jewish population in the country, where Mr. Broidy resides.  Haaretz knew and intended that the defamatory article—which differed significantly and materially from the version on Haaretz's Hebrew website—would be read and would damage Mr. Broidy's reputation in Florida, including with, among other Florida residents, the Florida Jewish community.  As a result of Haaretz publishing the defamatory article, Mr. Broidy's business associates and acquaintances in Florida have read the article and raised it with him.

3. In fact, contrary to the defamatory article, Mr. Broidy had no knowledge of or involvement with, and never received any compensation or other benefit from, the PR campaign. Neither Mr. Broidy nor his nominee on KOIOS's board of directors, Nathan Miller, was ever informed or ever learned of the PR campaign before it was reported in the press.  Neither of them ever knew or had reason to know of the campaign or of the alleged role of KOIOS's principals or employees in the campaign.  Haaretz does not claim in the article or elsewhere to have any evidence suggesting otherwise.

4. Nor was Mr. Broidy ever a "secret partner" in KOIOS, as Haaretz and its reporters originally falsely reported, falsely implying that he was a secret participant in KOIOS's allegedly

illicit activities. Haaretz later deleted from the article the word "secret," but that deletion not only confirmed Haaretz's knowledge that its article was false in key respects but was far too little and too late to remedy Haaretz's defamation. In fact, Haaretz has never changed its URL link to the article, which continues to perpetuate the defamatory falsehood that Mr. Broidy was a "secret partner" involved with the alleged PR campaign, and as a result of Haaretz's defamation, the same falsehood has been and continues to be published in numerous links on other websites, as well as on the X social media accounts of the reporters who wrote the defamatory article.

5. In any event, Haaretz continues to falsely state in the article that Mr. Broidy was a "partner" in KOIOS, connoting that Mr. Broidy was actively involved in the company's operations, which Haaretz also knows is false. In fact, Mr. Broidy was never a partner at all but merely a passive investor and shareholder in KOIOS—and after learning of the alleged actions of certain KOIOS personnel from Haaretz's reporting, he triggered a liquidation of the company to unwind his investment. And while Haaretz added Mr. Broidy's denial of knowledge of or involvement with the PR campaign, it did so in a manner falsely suggesting that Haaretz had evidence to the contrary, which it did not and could not have had, and the article continues to promulgate the same falsehood. Indeed, Haaretz continues to this day to publish on its X social media account the headline of and link to the article without Mr. Broidy's denial.

6. Moreover, Haaretz, in its article, also falsely accuses Mr. Broidy of what amounts to criminal conduct in mischaracterizing a 2018 New York Times article concerning Mr. Broidy. Contrary to Haaretz's reporting, Mr. Broidy never "promoted the interests" of the UAE or Saudi Arabia or otherwise worked on behalf of either nation—conduct that would have been illegal absent registration under the Foreign Agents Registration Act—and the New York Times article in no way "revealed" that he did.

7. After the article was published, Mr. Broidy demanded that Haaretz withdraw it, issue a correction and publicly apologize. Other than make the utterly inadequate revisions alleged above, Haaretz refused to do so. Haaretz published the article throughout the United States, including in English on its own website and on Apple News and plainly did so and continues to do so with actual knowledge of, or at a minimum with reckless disregard for, the falsity of its statements concerning Mr. Broidy.

8. In short, there is no ambiguity. Haaretz intended to and did publish a story defaming Mr. Broidy, including by falsely asserting and implying that Mr. Broidy, who has a long history of publicly clashing with Qatar, was secretly involved in or aware of, and profited from, a pro-Qatar PR campaign, for which there are pending criminal investigations and arrests in Israel. Haaretz's motive for doing so is plain: its reporting and editorial stance are harshly critical of Israeli Prime Minister Netanyahu and President Trump, while Mr. Broidy has long been closely and prominently associated with, and a pro-Israel supporter of, both leaders. Haaretz cared more about attacking Mr. Broidy—and through him the Prime Minister and the President—than it cared about the truth.

9. Haaretz's false and defamatory story has severely damaged Mr. Broidy's reputation, and Mr. Broidy brings this action to recover the damages Haaretz has caused him and to vindicate his reputation.

## PARTIES

10. Plaintiff Elliott Broidy is a resident and citizen of the State of Florida.

11. Defendant Haaretz Daily Newspaper Ltd. is a corporation organized and existing under the laws of Israel, registration no. 510015449, with its principal place of business in Israel, and is therefore a citizen or subject of a foreign state within the meaning of 28 U.S.C. § 1332(a)(2).

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the plaintiff is a citizen of a state and the defendant is a citizen or subject of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper under 28 U.S.C. § 1391(b) because defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

14. On September 1, 2025, Haaretz.com published, and to this day continues to publish, an article entitled "Elliott Broidy, anti-Qatar GOP Fundraiser Pardoned by Trump, Is Secret Partner in Firm Behind pro-Qatar Campaign." The article, credited to <u>three</u> separate bylined reporters, contains egregiously false and defamatory statements concerning Mr. Broidy. Among other things, Haaretz's article, as reflected in its very title, promulgates the egregiously false proposition that Mr. Broidy was involved in and profited from a "pro-Qatar PR campaign" in Israel "operated" by a firm identified in the article as KOIOS. That alleged campaign is the subject of a widely publicized criminal investigation and prosecution in Israel. The article also deliberately and repeatedly sought to portray Mr. Broidy as a hypocrite, given his very public background as a litigant against Qatar and its agents. As alleged above, the headline was modified to "Elliott Broidy, anti-Qatar GOP Fundraiser Pardoned by Trump, Linked to Firm Behind pro-Qatar Campaign," but the article is otherwise substantially unchanged and, among other things, continues referring—falsely—to Mr. Broidy as a "partner" in KOIOS.

15. Haaretz operates the English-language news service Haaretz.com as separate and distinct from Haaretz.co.il, its Hebrew-language news service. Haaretz markets Haaretz.co.il and Haaretz.com as separate products. Moreover, a paid subscription to Haaretz.co.il does not provide

5

access to Haaretz.com, or vice versa. Indeed, as alleged above, the article about Mr. Broidy and KOIOS in Hebrew at Haaretz.co.il was substantially and materially different from the defamatory English-language article at issue in this matter. Subscriptions to the English website are denominated in U.S. dollars, not Israeli shekels, as with the Hebrew website. Haaretz intentionally markets Haaretz.com to readers in the United States, sells advertising space in the United States through a least one U.S.-based company, sponsors conferences in the United States, conducts significant business operations in the United States, and has over a dozen personnel based in the United States, including correspondents and its Deputy Publisher.

16. Haaretz.com specifically and primarily targets Jewish readers in the United States, including in Florida, home to the third-largest Jewish population in the country, where Mr. Broidy resides. Defendant knew and intended that the defamatory article would be read in Florida, and would damage Mr. Broidy's reputation, in that community, as well as with other residents of Florida.

17. In fact, contrary to the defamatory article, Mr. Broidy had no knowledge of or involvement with, and never received any compensation or other benefit from, the PR campaign, and Haaretz does not and cannot claim to have any evidence suggesting otherwise. In 2023, Mr. Broidy made an investment in KOIOS, which he understood had developed technology for detecting and preventing financial fraud. As a result of his investment, he was a minority (16%) shareholder in the company and never had any role in its operations. The extensive due diligence he performed before investing revealed no sign of the PR campaign, which reportedly began in 2021, or of any payments or revenue related to any such campaign—nor did any revenues from such PR campaign appear in the company's accounts or the books into which Mr. Broidy had visibility. Neither Mr. Broidy nor his nominee on KOIOS's board of directors, Nathan Miller, was

ever informed or ever learned of the PR campaign before it was reported in the press. Neither of them ever knew or had reason to know of the campaign or of the alleged role of KOIOS's principals or employees in the campaign. Nor was any involvement by the company, its principals or any of its employees or resources ever disclosed to Mr. Broidy or Mr. Miller before or since Mr. Broidy made his investment in 2023 through at least the time of Haaretz's allegations being made publicly, including at any board meetings or in any board communications.

18.     Haaretz never claimed in the article to have evidence of either KOIOS signing the contract for the pro-Qatar campaign, let alone the company itself receiving compensation for such work. In fact, Haaretz's *own* reporting claimed that KOIOS did *not* sign the contract for the PR campaign, but rather that it was signed by a company owned and controlled by one of KOIOS's three co-founders—a fact that Haaretz buried in the story, which also deceptively mischaracterized this other company as a mere proxy for KOIOS, likely because the fact KOIOS never signed the contract for the PR campaign would only reinforce the truth that the alleged conduct at issue was concealed from Mr. Broidy. Further, as Mr. Miller informed Defendant's reporters—and which they would have and should have easily confirmed from KOIOS sources—Mr. Broidy and Mr. Miller live and work in the U.S., with no physical presence in Israel and have rarely ever set foot in the company's offices. Mr. Broidy and Mr. Miller limited their involvement primarily to identifying potential clients, and neither of them was active in overseeing or even being kept abreast of the company's day-to-day operations. Thus, the straightforward interpretation is that Mr. Broidy—who was locked in the middle of bitter, years-long litigation with the State of Qatar when he invested in KOIOS—was defrauded by the founders of the company in which he had invested. To the extent Haaretz had any relevant evidence regarding Mr. Broidy, all of it supported this straightforward interpretation, with an on-the-record quote explicitly stating, that—contrary

to the central implication of the defamatory article—Mr. Broidy had no role in or awareness of the alleged pro-Qatar work until the initial press accounts earlier this year.

19. Nor was Mr. Broidy ever a "partner," let alone a "secret partner," in KOIOS, as Haaretz and its reporters falsely reported, falsely implying that he was a secret participant—or somehow otherwise involved—in KOIOS's allegedly illicit activities. Haaretz later deleted from the article the word "secret," but that deletion not only confirmed Haaretz's knowledge that its article was false in key respects, but that was far too little and too late to remedy Haaretz's defamation. In fact, Haaretz's URL link to the article—https://www.haaretz.com/israel-news/2025-09-01/ty-article-magazine/.premium/elliott-broidy-gop-fundraiser-is-secret-partner-in-firm-behind-pro-qatar-campaign/00000199-066e-dd48-a79b-bffefbdd0000—has not been changed and continues to perpetuate the defamatory falsehood that Mr. Broidy was a "secret partner" involved with the alleged PR campaign. Moreover, as a result of Haaretz's defamation, the same falsehood has been and continues to be published in numerous links on other websites, as well as on the reporters' social media accounts on X, formerly known as Twitter.

20. In fact, not only was Mr. Broidy never a "partner" at all and merely a passive investor and shareholder in KOIOS, but he triggered a liquidation of the company after learning of the alleged activities from press reporting in order to unwind his investment in the firm. And while Haaretz added Mr. Broidy's denial of involvement in or knowledge of the PR campaign, it did so in a manner falsely suggesting that Haaretz had evidence to the contrary, which it did not and could not have had, and the article continues to promulgate the same falsehood. Indeed, Defendant continues to this day to publish on Haaretz.com's social media account on X, formerly known as Twitter, the headline of and link to the article without Mr. Broidy's denial.

21. Moreover, Haaretz in its article also falsely accuses Mr. Broidy of what amounts to criminal conduct in its mischaracterization of assertions made in a 2018 New York Times article concerning Mr. Broidy.  Contrary to Haaretz's reporting, Mr. Broidy did not "promote the interests" of the UAE or Saudi Arabia or otherwise work on behalf of either nation—all conduct that would have been illegal absent registration under the Foreign Agents Registration Act, which Mr. Broidy did not and was never required to do.

22. After the article was published, Mr. Broidy demanded that Haaretz withdraw it, issue a correction and publicly apologize.  Other than make the utterly inadequate revisions alleged above, Haaretz refused to do so.

## COUNT I – DEFAMATION

23. Plaintiff repeats and realleges paragraphs 1 through 19 as if fully set forth herein.

24. Defendant published, negligently and/or with actual malice, false statements of fact about plaintiff to third parties.

25. The statements were published to third parties without privilege.

26. The statements were defamatory, defamatory by implication and defamatory per se.

27. As a result, plaintiff has sustained general and special damages in amounts to be determined at trial.

WHEREFORE, plaintiff demands judgment against defendant for compensatory damages, punitive damages, costs, interest and such further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Dated: October 20, 2025

*/s/ Ethan J. Loeb*
**ETHAN J. LOEB**
Fla. Bar No.: 0668338
EthanL@BLHTlaw.com
KerriR@BLHTlaw.com
Eservice@BLHTlaw.com
**EDWARD COLIN THOMPSON**
Fla. Bar No.: 0684929
ColinT@BLHTlaw.com
HeatherW@BLHTlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
1001 Water Street, Suite 475
Tampa, Florida 33602
Phone: (813) 223-3888
Fax: (813) 228-6422

And

**DANIEL R. BENSON**
NY Bar No.: 1712223
DBenson@hbb-firm.com
**HERSCHMANN BENSON**
**BOWEN LLP**
305 Broadway FL 7
New York, NY 10007-1188
Phone: (917) 341-4628
*Pro Hac Vice application forthcoming*

***Attorneys for Plaintiff***