UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ELLIOTT BROIDY,

                    Plaintiff,

       v.

HAARETZ DAILY NEWSPAPER LTD,       Case No. 9:25-cv-81295-AMC

                    Defendant.

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW

SHULLMAN FUGATE PLLC

s/ *Yelan Escalona*
Deanna K. Shullman (Fla. Bar No. 514462)
Yelan Escalona (Fla. Bar No. 1031564)
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
(561) 429-3619
dshullman@shullmanfugate.com
yescalona@shullmanfugate.com

DAVIS WRIGHT TREMAINE LLP

s/ *Nathan Siegel*
Nathan Siegel (*pro hac vice* forthcoming)
Marietta Catsambas (*pro hac vice* forthcoming)
1301 K St. NW, Suite 500E
Washington, DC 20005
(202) 973-4200
nathansiegel@dwt.com
mariettacatsambas@dwt.com

Ryan W. Hicks (*pro hac vice* forthcoming)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
(212) 489-8230
ryanhicks@dwt.com

*Counsel for Defendant*
*Haaretz Daily Newspaper Limited*

**TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ......................................................................................... 1

II.   FACTUAL BACKGROUND.......................................................................................... 2

    A.   The Parties ...................................................................................................... 2

    B.   The Article ...................................................................................................... 2

    C.   The Complaint ................................................................................................. 3

III.  ARGUMENT................................................................................................................. 3

    A.   THIS COURT LACKS PERSONAL JURISDICTION OVER HAARETZ ............................................................................................................. 4

        1.   Haaretz Is Not Subject to General Jurisdiction.............................. 4

        2.   Haaretz Is Not Subject to Specific Jurisdiction ............................ 5

    B.   PLAINTIFF FAILS TO PLEAD A DEFAMATION CLAIM ................... 7

        1.   The Article Does Not State or Imply that Plaintiff Knew About Any Pro-Qatar Activities Involving KOIOS................................... 9

        2.   The Article Does Not State or Imply that Plaintiff Engaged in Criminal Conduct by Violating the Foreign Agents Registration Act.................................................................................................... 12

        3.   The Complaint Fails to Plausibly Allege Haaretz Published the Article with Actual Malice........................................................... 14

IV.   CONCLUSION............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aollywood, LLC v. Jean-Louis*,
   2025 WL 3699527 (S.D. Fla. Apr. 21, 2025) ..............................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................8, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................7, 8

*Bell v. Pollock*,
   2025 WL 1148677 (M.D. Fla. Apr. 17, 2025) ........................................................................8, 9

*Bentz v. Taishan Gypsum Co.*,
   2021 WL 12299203 (N.D. Ga. Aug. 6, 2021) ............................................................................6

*Berisha v. Lawson*,
   973 F.3d 1304 (11th Cir. 2020) ...............................................................................................15

*Bilal v. Benoit*,
   2025 WL 3240264 (11th Cir. Nov. 20, 2025) ..........................................................................16

*Blankenship v. Napolitano*,
   451 F. Supp. 3d 596 (S.D.W. Va. 2020), *on reconsideration in part sub nom.*
   *Blankenship v. Fox News Network, LLC*, 510 F. Supp. 3d 356 (S.D. W. Va. 2020) ................7

*Bongino v. Daily Beast Co., LLC*,
   477 F. Supp. 3d 1310 (S.D. Fla. 2020) ....................................................................3, 8, 10, 14

*Bowman v. Aporosa*,
   2025 WL 3684123 (S.D. Fla. Feb. 6, 2025) ..............................................................................7

*Boyles v. Mid-Fla. Television*,
   431 So. 2d 627 (Fla. 5th DCA 1983), *approved*, 467 So. 2d 282 (Fla. 1985) ........................13

*Button v. McCawley*,
   2025 WL 50431 (S.D. Fl., Jan. 8, 2025) ..................................................................................16

*Byrd v. Hustler Magazine, Inc.*,
   433 So. 2d 593 (Fla. 4th DCA 1983) .......................................................................................11

*Calder v. Jones*,
   465 U.S. 783 (1984) ...................................................................................................................5

ii

*Carfagna v. Fisher Island Club, Inc.*,
    796 F. Supp. 3d 1178 (S.D. Fla. 2025) ....................................................................8

*Carmouche v. Tamborlee Mgmt., Inc.*,
    789 F.3d 1201 (11th Cir. 2015) ..............................................................................4

*Carter v. Ford Motor Co.*,
    2021 WL 1165248 (S.D. Fla. Mar. 26, 2021)............................................................6

*Corsi v. Newsmax Media*,
    519 F. Supp. 3d 1110 (S.D. Fla. 2021) ..................................................................10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................................5

*Dershowitz v. Cable News Network, Inc.*,
    153 F.4th 1189 (11th Cir. 2025), *pet. for cert. filed,* 25-770 (U.S. Dec. 31, 2025) .....15, 17, 18

*Donner v. DER SPIEGEL Gmbh & Co. KG*,
    747 F. Supp. 3d 681 (S.D.N.Y. 2024), *aff'd,* 2025 WL 2985764 (2d Cir. Oct. 23, 2025) ........7

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
    148 F.4th 1332 (11th Cir. 2025) ..............................................................................8

*Edwards v. Schwartz*,
    378 F. Supp. 3d 468 (W.D. Va. 2019) ...................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................................5

*Hourani v. Psybersolutions LLC*,
    164 F. Supp. 3d 128 (D.D.C. 2016) .......................................................................16

*Jacob v. Lorenz*,
    626 F. Supp. 3d 672 (S.D.N.Y. 2022).......................................................................8

*Jacoby v. Cable News Network, Inc.*,
    537 F. Supp. 3d 1303 (M.D. Fla. 2021),
    *aff'd,* 2021 WL 5858569 (11th Cir. Dec. 10, 2021) .............................................15, 16, 17, 18

*Jews For Jesus, Inc. v. Rapp*,
    997 So. 2d 1098 (Fla. 2009).............................................................................10, 11

*Johnston v. Borders*,
    36 F.4th 1254 (11th Cir. 2022) ................................................................................9

*Karnas v. Cuban*,
    2025 WL 3759241 (S.D. Fla. Dec. 30, 2025) ...........................................................7

*Kieffer v. Atheists of Fla., Inc.*,
    269 So. 3d 656 (Fla. 2d DCA 2019) ......................................................................12

*Lawrence v. Altice USA*,
    841 F. App'x 273 (2d Cir. 2021) ...........................................................................12

*Lewis v. Abramson*,
    673 F. Supp. 3d 72 (D.N.H. 2023)..........................................................................10

*Lewis v. Mercedez-Benz USA, LLC*,
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) .....................................................................5

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ............................................................................4, 5

*Mac Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021) ...................................................................14

*Markle v. Markle*,
    2024 WL 1075339 (M.D. Fla. Mar. 12, 2024), *appeal filed*, No. 24-11091
    (11th Cir. Apr. 9, 2024) .......................................................................................11

*McCall v. Zotos*,
    2023 WL 3946827 (11th Cir. June 12, 2023) ........................................................4, 6

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ......................................................................... *passim*

*Miller v. Gizmodo Media Grp.*,
    383 F. Supp. 3d 1365 (S.D. Fla. 2019) .....................................................................7

*Miller v. Gizmodo Media Grp., LLC*,
    2019 WL 1790248 (S.D. Fla. Apr. 24, 2019) ............................................................2

*Mishiyev v. Davis*,
    402 So. 3d 443 (Fla. 2d DCA 2025) .........................................................................8

*Moore v. Cecil*,
    109 F.4th 1352 (11th Cir. 2024) ...............................................................4, 5, 6, 15

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020)...................................................................................18

*Pick v. Raffensperger*,
    2025 WL 2954078 (11th Cir. Oct. 20, 2025).............................................................2

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022)......................................................................16

*Rasmussen v. Collier Couty Pub. Co.*,
  946 So. 2d 567 (Fla. 2d DCA 2006) ......................................................................................12

*Reed v. Chamblee*,
  2025 WL 1874638 (11th Cir. July 8, 2025) ............................................................................18

*Rouch v. Enquirer & News*,
  487 N.W.2d 205 (Mich. 1992)...............................................................................................12

*Rubin v. U.S. News & World Rep.*,
  271 F.3d 1305 (11th Cir. 2001) .............................................................................................10

*Sanchez v. Cellco P'ship*,
  2006 WL 8432732 (S.D. Fla. Sept. 26, 2006) ..........................................................................9

*Silvester v. Am. Broad. Companies, Inc.*,
  839 F.2d 1491 (11th Cir. 1988) .......................................................................................16, 17

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)..................................................................................................................4

*Southbark, Inc. v. Mobile County Comm.*,
  974 F. Supp. 2d 1372 (S.D. Ala. 2013)..................................................................................16

*Spilfogel v. Fox Broad. Co.*,
  2009 WL 10666811 (S.D. Fla. Dec. 2, 2009) ...........................................................................9

*Tovarian v. Rubic, LLC*,
  2025 WL 747435 (S.D. Fla. Nov. 13, 2024)...........................................................................18

*Trump Media & Tech. Grp. Corp. v. WP Co.*,
  2024 WL 5202865 (M.D. Fla. Dec. 23, 2024)........................................................................12

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) ......................................................................................*passim*

*United States ex rel. Bernier v. InfiLaw Corp.*,
  311 F. Supp. 3d 1288 (M.D. Fla. 2018)..................................................................................16

*United States v. Duran*,
  596 F.3d 1283 (11th Cir. 2010) .............................................................................................14

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ...............................................................................................4

*Vibe Ener v. Duckenfield*,
  2020 WL 6373419 (S.D. Fla. Sept. 29, 2020) ........................................................................12

*Waite v. All Acquisition Corp.*,
  901 F.3d 1307 (11th Cir. 2018) ................................................................................................5

*Young v. New Haven Advoc.*,
  315 F.3d 256 (4th Cir. 2002) ...................................................................................................6

**Statutes**

Fla. Stat. Ann. § 48.193 *et seq* ...................................................................................................4, 5

**Other Authorities**

Fed. R. Civ. P. 12 *et seq* ....................................................................................................1, 7, 8, 16

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Haaretz Daily Newspaper Ltd. moves to dismiss with prejudice Plaintiff Elliott Broidy's Complaint ("Compl.") (ECF No. 1) for lack of personal jurisdiction and for failure to state a claim.

## I.        PRELIMINARY STATEMENT

This defamation lawsuit arises from a straightforward, factual article ("the Article"), written in Israel and published online by an Israeli newspaper (*Haaretz*), about Plaintiff's investment in an Israeli fintech company named KOIOS.  After a Delaware company owned by Plaintiff became a shareholder in that company, the company became part of a political scandal in Israel when it was revealed that certain advisors of Israel's Prime Minister had organized a public relations campaign aimed at improving Qatar's image.  The Article neither states nor implies that Plaintiff, a prominent anti-Qatar political activist, was ever aware of any pro-Qatar political activity by the company or its employees.  To the contrary, the Article repeatedly highlighted information from Plaintiff's representative that Plaintiff had no knowledge of any pro-Qatar activities and cut ties with the company as soon as he learned about them from the press.  The Article even independently confirms some of that account.

 Plaintiff's defamation claim fails for two reasons.  *First,* this Court lacks personal jurisdiction over Haaretz, an Israeli company.  The Article does not target Florida, and indeed hardly anyone in Florida read it.  In these circumstances, the mere fact that Plaintiff is a Florida resident cannot confer jurisdiction over Haaretz.

*Second*, the Complaint fails to state a defamation claim.  At bottom, this lawsuit is premised on alleging that the Article accuses Plaintiff of knowingly profiting from a pro-Qatar public relations campaign.  But the Article simply does not report that, and it is therefore not reasonably capable of the alleged defamatory meaning.  Similarly, Plaintiff alleges that the Article mischaracterizes a *New York Times* article to accuse him of criminal conduct.  But here too, the Article neither mischaracterizes the *Times* story nor accuses him of any crime.  Finally, Plaintiff is, at a minimum, a limited public figure, requiring him to allege actual malice.  But not only does the Complaint fail to plead any facts that plausibly show actual malice, the few facts it does plead point the other way.  The Complaint should therefore be dismissed, with prejudice.

## II.   FACTUAL BACKGROUND

### A.   The Parties

Plaintiff Elliott Broidy is a resident of Florida. Compl. ¶ 10.  RLN Holdings Inc., a Delaware corporation owned by Mr. Broidy, holds a 16% share in KOIOS, an Israeli company. *Id.* ¶ 17.

Defendant Haaretz Daily Newspaper Ltd. (pronounced "Hah-ah-rets") is an Israeli corporation with its place of business in Israel.  Compl. ¶ 11; *see also* Declaration of Lior Kodner ("Kodner Decl.") ¶ 3.  Its name in Hebrew means "the Land," a phrase that refers to the land of Israel and many Jews use to express their sense of a historical connection to that place.  *Haaretz* was launched in 1919 and is the oldest newspaper in Israel.  Kodner Decl. ¶ 5.  Most relevant here, Haaretz publishes a news publication online in Hebrew, at Haaretz.co.il, and an English edition at Haaretz.com.  *Id.* ¶ 6.  The English-language website is available to and has subscribers in Israel and throughout the world.  *Id.*  Haaretz does not have an office or employees in Florida. *Id.* ¶ 4.

### B.   The Article

On September 1, 2025, Haaretz published the Article, which when first published was entitled "Elliott Broidy, GOP Fundraiser Pardoned by Trump, Is Secret Partner in Firm Behind pro-Qatar Campaign."[1]  Compl. ¶ 2.  The Article in part summarizes previous reporting about an ongoing controversy in Israel over a pro-Qatar influence campaign headed by two advisors to Israel's Prime Minister.  One of two private Israeli companies reported to be involved in the campaign is named KOIOS.  The Article reports that in 2023 RLN Holdings, a Delaware company, "joined as a partner and received 16% of KOIOS' shares."  Declaration of Nathan Siegel ("Siegel Decl.") Ex. 1; *see also id.* Ex. 3.  It reports that Mr. Broidy owns RLN Holdings, and also had a representative on KOIOS's Board, Nathan Miller.

---

[1] Although Plaintiff chose not to attach the Article to his Complaint, this Court may consider it on a motion to dismiss because it is central to his claims, and is deemed to be incorporated by reference by the Complaint. *See, e.g.*, *Miller v. Gizmodo Media Grp., LLC*, 2019 WL 1790248, at *2 n.1 (S.D. Fla. Apr. 24, 2019); *see also Pick v. Raffensperger*, 2025 WL 2954078, at *4 (11th Cir. Oct. 20, 2025) (book that included statements challenged in defamation complaint was incorporated by reference).  Because the Complaint challenges the Article both as it originally appeared and as it appears today, Compl. ¶ 2 (alleging the two versions are "substantially the same"), Defendant is attaching both versions.  Siegel Decl. Exs. 1, 3.

The Article never reports that Mr. Broidy was aware of any activity by the company or any of its employees concerning Qatar, or indeed any political activity at all. Nor does the Article report that he has ever been investigated, questioned or suspected by Israeli law enforcement in connection with their investigation of the pro-Qatar influence campaign. To the contrary, starting with its sub-headline the Article goes on to repeatedly feature Mr. Miller's statements to Haaretz explaining that both Mr. Broidy and Mr. Miller understood he was investing in a tech business that fights financial fraud; that they had no knowledge of any activity concerning Qatar; that they learned about it from the press; and that Mr. Miller then resigned from the Board and Mr. Broidy "cut ties with the company." Siegel Decl. Ex. 1 at 1, 9. The Article independently confirms that Mr. Miller had resigned from the Board by citing Israeli corporate records, and also reports that "sources in the company" said Mr. Miller "was furious that he and Broidy were not updated" about any activity involving Qatar. Siegel Decl. Exs. 1, 3.

The Article was written by three reporters, all in Israel. Kodner Decl. ¶ 7. Only 76 unique viewers accessed the Article in Florida. Kodner Decl. ¶ 12.

### C.    The Complaint

The Complaint alleges that the Article states or implies that Mr. Broidy is a hypocrite because he knew about and consciously profited from KOIOS's pro-Qatar campaign. Compl. ¶¶ 3, 14, 17-18. It also alleges that referring to Mr. Broidy as a "partner," or in the Article as originally published as a "secret partner" was false and defamatory. *Id.* ¶¶ 4, 19. The Complaint further alleges that the Article "mischaracteriz[es]" a 2018 *New York Times* story, and by doing so implies Mr. Broidy violated the Foreign Agents Registration Act. *Id.* ¶¶ 6, 21. Plaintiff alleges one count of defamation, claiming statements in the Article "were defamatory, defamatory by implication and defamatory per se." *Id.* ¶ 26.

### III.    ARGUMENT

Courts in this Circuit favor early dismissal of meritless defamation claims because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *see also Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) (noting policy preference for early dismissal of defamation claims). At the outset,

this case should be dismissed for want of personal jurisdiction.  But even if jurisdiction exists, it should be dismissed on the merits.[2]

### A.   THIS COURT LACKS PERSONAL JURISDICTION OVER HAARETZ

To determine whether personal jurisdiction exists over a nonresident defendant, federal courts in Florida first look to whether the assertion of personal jurisdiction "exists over the nonresident defendant … under Florida's long-arm statute," and if so, "whether [the] exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton*, 736 F.3d at 1350.

Importantly, the Circuit has recently clarified how these principles apply to the scenario presented here: a defamation claim brought by a resident of the forum against a foreign defendant, based on information that was published online and accessible anywhere. *See Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024); *see also McCall v. Zotos*, 2023 WL 3946827, *4-5 (11th Cir. June 12, 2023).  Both cases affirmed the dismissal of such claims for lack of personal jurisdiction, and their reasoning requires the same result here.

### 1.   Haaretz Is Not Subject to General Jurisdiction

Haaretz exemplifies the kind of corporate defendant that could not possibly be subject to general jurisdiction here.  The Florida long-arm statute confers jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state."  Fla. Stat. § 48.193(2).  In analyzing whether a defendant is subject to general jurisdiction, "[t]he reach of [section 48.193(2)] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

"[T]he Supreme Court clarified that a court may assert general jurisdiction over a foreign

---

[2] Haaretz has also separately moved for dismissal for *forum non conveniens* because Israel, not Florida, is the preferred forum.  As explained further in that motion, this Court has discretion to address the forum issue first, and should it dismiss on that basis it need not resolve whether it has jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007).

corporation only where the corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1208-09 (S.D. Fla. 2021) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). For a corporation, "the place of incorporation and principal place of business are paradigm … bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925 (2011). Haaretz is an Israeli corporation with its principal place of business in Tel Aviv, Israel. Kodner Decl. ¶ 3. Accordingly, this Court lacks general jurisdiction over Haaretz.

### 2.    Haaretz Is Not Subject to Specific Jurisdiction

Under the long-arm statute, "a non-resident submits to personal jurisdiction in Florida by '[c]ommitting a tortious act within this state.'" Fla. Stat. Ann. § 48.193(1)(a)(2)). Generally, the Due Process Clause requires that specific jurisdiction is only proper when (1) the plaintiff's claims "arise out of or relate to" defendant's contacts with the forum, (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state, and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312-13 (11th Cir. 2018).

More specifically, in defamation cases the test most typically applied to determine whether the requisite minimum contacts exist is the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984), which was a defamation case. The effects test requires the plaintiff to show that the defendant committed a tort that "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton*, 736 F.3d at 1356 (citation modified). "Post-*Calder*, the Supreme Court clarified that a defendant's actions do not create sufficient contacts with the forum state 'simply because he allegedly directed his conduct at [a] plaintiff[ ] whom he knew had … connections' with the forum state." *Moore*, 109 F.4th at 1363.

In *Moore,* the Circuit held that to apply the effects test to the "unique context" of "internet-based activities," courts "must look to the defendant's focus, purpose, and/or intent in posting the information." *Id. Moore* largely looked to caselaw from other Circuits involving online newspapers to conclude that posting an article on a generally accessible website does not establish jurisdiction, absent "evidence that the defendant posted the allegedly defamatory information hoping to reach the forum state or an audience in the forum state specifically," rather than readers

anywhere. *Id.* at 1364. *Moore* held that although some tweets at issue in that case involved accusations of pedophilia against an Alabama resident, Alabama courts lacked  jurisdiction because "[t]here is no evidence that the four tweets in question were directed at Alabama or that [the defendant] intended to target an Alabama audience as opposed to his followers or a national audience generally." *Id.*; *see also McCall*, 2023 WL 3946827, at *5 (no personal jurisdiction over defamation claim where there was no evidence that the defendant "targeted Florida readers" specifically, as opposed to all readers everywhere).

Those principles require dismissal of the Complaint.  Haaretz wrote and published the Article in Israel on a website that is available to subscribers located anywhere in the world and does not specifically target Florida.  The "focal point" of the Article is clearly Israel, not Florida. *Moore*, 109 F.4th at 1363 (quoting *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021)); *see also Young v. New Haven Advoc.*, 315 F.3d 256, 264 (4th Cir. 2002) (Virginia courts lacked personal jurisdiction over defamation claim by a Virgina resident against a Connecticut newspaper where "Connecticut, not Virginia, was the focal point of the articles"). The Article was part of Haaretz's ongoing coverage of an Israeli political controversy about Israeli firms' and Israeli officials' involvement in a pro-Qatar PR campaign.  Siegel Decl. Ex. 1.  Even with respect to Mr. Broidy, the focus of the Article is on his business activities in Israel, not Florida, and even his activities in the Israeli company resulted from shares held by a Delaware corporation (RLN Holdings).

Indeed, far from establishing personal jurisdiction, even the allegations of the Complaint point to its absence.  It alleges that "[s]ubscriptions to the English website are denominated in U.S. dollars," and "Haaretz intentionally markets Haaretz.com to readers in the United States, sells advertising space in the United States through a least one U.S.-based company, sponsors conferences in the United States, conducts significant business operations in the United States, and has over a dozen personnel based in the United States, including correspondents and its Deputy Publisher."  Compl. ¶ 15.  But "the Fourteenth Amendment's due process guarantee … requires a plaintiff to show that his claim arises, not from the defendant's *nationwide* contacts, but from its *state-specific* contacts."  *Carter v. Ford Motor Co.*, 2021 WL 1165248, at *13 (S.D. Fla. Mar. 26, 2021); *see also Bentz v. Taishan Gypsum Co.*, 2021 WL 12299203, at *10 (N.D. Ga. Aug. 6, 2021) ("[A]bsent allegations that Taishan specifically targeted Georgia for the sale of its drywall, instead of just the United States generally, Plaintiffs cannot establish that Taishan purposefully availed

itself of Georgia.").

Although the "effects test" is most typically applied to the context of defamation, with respect to intentional torts generally courts may also apply the "minimum contacts" test.  If also applied here, as Judge Altman recently noted, in the specific context of digital materials, "[p]ractically speaking" the minimum contacts test "resembles the intent element of the effects test." *Karnas v. Cuban*, 2025 WL 3759241, at \*10 (S.D. Fla. Dec. 30, 2025); *see also Bowman v. Aporosa*, 2025 WL 3684123, at \*5 (S.D. Fla. Feb. 6, 2025) (dismissing defamation claim for failure to satisfy minimum contacts test where there was insufficient evidence of the defendant's "intent to target and focus on Florida readers or that Florida was targeted as the focal point of his alleged statements").

Even more specifically, with respect to digital publications courts frequently consider the actual number of persons who accessed an article to evaluate minimum contacts. *Aollywood, LLC v. Jean-Louis*, 2025 WL 3699527, at \*3 (S.D. Fla. Apr. 21, 2025).  Here, only *76 individuals* in Florida viewed the Article as of the date this case was filed, with 108 page views.  Kodner Decl. ¶ 12 & Ex. 1.  That is far too insubstantial a readership to establish jurisdiction over Haaretz.  *See, e.g.*, *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 632 (S.D.W. Va. 2020)  (minimum contacts were not present due to the "small number of West Virginia users who actually read the article," specifically "forty-eight (48) West Virginia users"), *on reconsideration in part sub nom. Blankenship v. Fox News Network, LLC*, 510 F. Supp. 3d 356 (S.D. W. Va. 2020); *Miller v. Gizmodo Media Grp.*, 383 F. Supp. 3d 1365, 1374-75 (S.D. Fla. 2019) (minimum contacts test not satisfied where less than one percent of audience for a tweet were in Florida); *see also Donner v. DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681, 692-93 (S.D.N.Y. 2024) ("purposefully availed" requirement of New York's long-arm statute was not satisfied as to a subscription-based German newspaper, where "there were only 112 page views and sixty-eight page visits to the allegedly defamatory article from New York"), *aff'd*, 2025 WL 2985764 (2d Cir. Oct. 23, 2025).

Because this Court cannot exercise jurisdiction over Haaretz, the Complaint should be dismissed.

## B.    PLAINTIFF FAILS TO PLEAD A DEFAMATION CLAIM

Under Rule 12(b)(6), a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal quotation marks omitted). Although "well-pleaded factual allegations" are taken as true for purposes of a Rule 12(b)(6) motion, mere legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1346 (11th Cir. 2025) (same). Where, as here, a plaintiff has "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.

To plead defamation under Florida law, a plaintiff must sufficiently allege "five elements: (1) publication, (2) of a false statement, (3) with knowledge or reckless disregard as to the falsity (for public figures) or negligence (for private figures), (4) which causes actual damages, and (5) is 'defamatory.'" *Mishiyev v. Davis*, 402 So. 3d 443, 450 (Fla. 2d DCA 2025). Because Plaintiff does not and cannot plead the necessary elements of his defamation claim as a matter of law, his Complaint should be dismissed with prejudice.

### A. The Article Is Not Reasonably Capable of the Alleged Defamatory Meanings

In every defamation case there are several threshold questions of law that, where applicable, courts must address before a case may proceed. One key legal issue is "[w]hether a statement is susceptible to defamatory interpretation," which "is a question of law left to the Court." *Carfagna v. Fisher Island Club, Inc.*, 796 F. Supp. 3d 1178, 1188 (S.D. Fla. 2025) (quoting *Bongino*, 477 F. Supp. 3d at 1317). This inquiry often involves two distinct legal questions. The first is whether the publication is reasonably susceptible to the meaning alleged by the plaintiff. Put another way, this inquiry concerns whether the publication actually conveys what the Complaint alleges it means. If it does not, the claim must be dismissed. *See, e.g.*, *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 690 (S.D.N.Y. 2022) (dismissing statement for lack of defamatory meaning because statement "means exactly what it says" and not what plaintiff said it implied). If it does, the next step in the inquiry is to assess whether that alleged meaning is reasonably understood to be defamatory. *See, e.g.*, *Bell v. Pollock*, 2025 WL 1148677, at *9, 12 (M.D. Fla. Apr. 17, 2025) (dismissing statements that the court found were not defamatory in nature).

"This inquiry turns on the 'gist' of the alleged defamatory statement and the context in which that statement was made," including "all the words used" in the entire Article. *Bongino*, 477 F. Supp. 3d at 1317. Each allegedly defamatory statement "should be construed as the common mind would understand it, and not in [its] mildest or most grievous sense." *Johnston v.*

*Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (internal quotation marks omitted).  District courts routinely dismiss defamation claims at the pleading stage after concluding that the statements at issue are not defamatory.  *See, e.g.*, *Bell*, 2025 WL 1148677, at \*9, 12; *Spilfogel v. Fox Broad. Co.*, 2009 WL 10666811, at \*6 (S.D. Fla. Dec. 2, 2009); *Sanchez v. Cellco P'ship*, 2006 WL 8432732, at \*3 (S.D. Fla. Sept. 26, 2006).

### 1.    The Article Does Not State or Imply that Plaintiff Knew About Any Pro-Qatar Activities Involving KOIOS

Put simply, the Article does not report that Mr. Broidy was a knowing participant in any pro-Qatar campaign involving KOIOS.  The Article is a straightforward recitation of the facts about the Plaintiff's relationship to that company.  Nowhere does the Article report that Plaintiff knew or even suspected that KOIOS was involved in any campaign.  To the contrary, the only statements in the Article that speak to Plaintiff's knowledge all say that he was totally unaware of such activities, beginning with the Article's sub-headline:  "Broidy was unaware of the alleged work related to Qatar and has cut ties with the company."  Siegel Decl. Ex. 1 at 1 (quoting Mr. Miller).  Next, the Article's third paragraph reports that Nathan Miller, Mr. Broidy's former representative on the Board,

> says they were not told by KOIOS about the campaign, had no idea that the firm was involved with any campaigns at all or work on Qatar's behalf and that he resigned from its board once he became aware of the alleged relationship. According to Miller, they thought they were investing in a tech firm focused on fighting online financial fraud.

*Id.* at 2.  Moreover, the Article *confirms* that Mr. Miller in fact "stopped serving as a director at KOIOS" shortly after Haaretz first reported about the company in February 2025, based on Haaretz's own research into Israeli corporate records.  Siegel Decl. Ex. 1 at 7-8.  And the Article further supports his explanation of Mr. Broidy's relationship to the company by reporting that:

> Sources in the company claim he [Miller] was furious that he and Broidy were not updated on the company's activities regarding Qatar.  Sources familiar with the matter claimed Broidy invested in the company, believing it was marketing a technological product focused on monitoring social media, and not providing campaign services, as it did for Qatar.

Siegel Decl. Ex. 1 at 8.  Thus, far from "suggesting that Haaretz had evidence to the contrary" (Compl. ¶ 3), the Article explicitly reports evidence that supports Mr. Broidy's explanations.  Finally, the Article ends by again quoting Mr. Miller:

"I was unaware of the KOIOS' leadership's alleged work related to Qatar and learned about it from a newspaper story," Miller said in response to the report. "Once I became aware of the alleged relationship, I resigned from the Board, ceased all connection with the company, and informed Elliott Broidy, who was also unaware."

Miller added, "Elliott Broidy has also cut ties with the company."

Siegel Decl. Ex. 1 at 8. Thus, the Complaint should be dismissed because it is not reasonably susceptible to the alleged defamatory meaning.[3]

Alternatively, the Complaint alleges a theory of defamation by implication—i.e., that the Article implies that Mr. Broidy knew about and profited from a pro-Qatar influence campaign. Compl. ¶¶ 3, 8, 17-18, 26. That theory fares no better.

The Circuit recognizes that by their very nature defamation by implication theories raise significant First Amendment problems. *Rubin v. U.S. News & World Rep.*, 271 F.3d 1305, 1309 n.11 (11th Cir. 2001). As a result, in addition to all the protections of defamation law that generally apply, Florida law imposes additional restrictions on implication theories. *Bongino*, 477 F. Supp. 3d at 1310. To plead defamation by implication, a plaintiff must show that a defendant "(1) juxtaposes a series of [literally true] facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts[.]" *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2009) (internal quotation marks omitted). If a plaintiff alleges only that the "accusations were false—not that they were true and gave a false implication," there is no defamation by implication claim. *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021) (subsequent history omitted). As with the defamatory meaning inquiry in a straightforward defamation claim, "[w]hether the defendant's statements constitute defamation by implication is a question of law for the court to determine." *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) (citing *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. 1st DCA 1983)).

---

[3] Plaintiff alleges that "Defendant continues to this day to publish on Haaretz.com's social media account on X, formerly known as Twitter, the headline of and link to the article without Mr. Broidy's denial." Compl. ¶ 20. A copy of the posting on X, also incorporated by reference, is also attached to the motion. Siegel Decl. Ex. 31. A tweet must be "read in the context of … the links provided therein," *Lewis v. Abramson*, 673 F. Supp. 3d 72, 94 (D.N.H. 2023). Because, as the Complaint alleges, the tweet contains a link to the entire Article, its context included the Article and is no different than the Article itself for purposes of evaluating Plaintiff's allegations of defamatory meaning.

Plaintiff bases his implication theory primarily on the Article's description of Mr. Broidy as a "partner" in KOIOS, as well as the original Article's reference to him as a "secret partner." Compl. ¶¶ 4, 19. The Complaint does not appear to allege, nor could it, that there is anything independently defamatory about being either a "partner" or a "secret partner" in a company. But the Complaint alleges that in context, referring to Mr. Broidy as a "partner" conveyed the implication that Mr. Broidy was involved in the pro-Qatar campaign, and that the term "secret partner" further implied that he participated in that campaign secretly. *Id.*

These allegations on their face fail Florida's test for defamation by implication because the Complaint alleges that it was *false* to describe Mr. Broidy as a "partner" or "secret partner." *Id.* ¶¶ 4-5, 19-20. But as discussed above, defamation by implication requires that the facts that allegedly convey a false implication be allegedly *true. Jews For Jesus*, 997 So. 2d at 1106. As a matter of law, dismissal is "require[d]" when the plaintiff alleges that the statements at issue "were false—not that they were true and gave a false implication." *Markle v. Markle*, 2024 WL 1075339, at *24 (M.D. Fla. Mar. 12, 2024) (complaint failed to state a claim for defamation-by-implication because she "fail[ed] to identify the literally true facts that would serve as the basis for such a claim," instead alleging that all the challenged statements were false), *appeal filed*, No. 24-11091 (11th Cir. Apr. 9, 2024). For this reason alone, the alleged implication theory fails and the Complaint should be dismissed.

In any event, Plaintiff's implication theory also fails for the same reason that his defamation claim fails. Viewed as a whole, the Article neither states nor implies that Mr. Broidy knew about any pro-Qatar activity, and it expressly reports a wealth of information to the contrary. The Article actually describes RLN Holdings' interest in the company in several ways, including as a "partner," holding "16% of the company's shares," and having the authority to appoint a Board representative. Siegel Decl. Ex. 1 at 3. None of those characterizations speak to Mr. Broidy's knowledge of a pro-Qatar campaign.[4] At bottom, the Article is what it is—a factual account of

---

[4] Because the Complaint does not, and indeed could not, allege that the term "partner" is independently defamatory, the Court need not address whether in context it is also materially false, another element of any defamation claim. *See, e.g.*, *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation action."). But if for any reason the Court were to address that question, as it appears in the Article the term "partner" is substantially true. "[U]nder the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Kieffer v. Atheists of Fla.*, *Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (quoting *Smith v. Cuban*

Mr. Broidy's holdings in KOIOS, along with both a detailed explanation from his representative and independent reporting by Haaretz that supports much of that account.[5]  In short, the Complaint fails to state a claim for defamation by implication.

> **2.**     **The Article Does Not State or Imply that Plaintiff Engaged in Criminal Conduct by Violating the Foreign Agents Registration Act**

---

*Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999)).  A statement is "substantially true" if "it would have no different effect on the mind of a reader than the literal truth", *Trump Media & Tech. Grp. Corp. v. WP Co*., 2024 WL 5202865, at \*7 (M.D. Fla. Dec. 23, 2024), and must be assessed in the "full context of its publication." *Kieffer*, 269 So.2d at 659.  Courts recognize that journalists write for laypersons, not lawyers, and routinely hold that technical differences in the use of legal terminology do not render a statement materially false, including in circumstances far more potentially injurious to reputation than the technicalities of corporate structure.  *See, e.g.*, *Lawrence v. Altice USA*, 841 F. App'x 273, 275-76 (2d Cir. 2021) (characterization of arrestee's conduct as "stalking," while technically inaccurate as a legal matter, was substantially true because it "comport[ed] with the common understanding of the term[]"); *Rasmussen v. Collier Couty Pub. Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006) ("[i]n conveying news and comment . . . [journalists] need not describe legal proceedings in technically precise language."); *Rouch v. Enquirer & News*, 487 N.W.2d 205, 218-19 (Mich. 1992) (it was substantially true to report that plaintiff was "charged", when he was actually arrested, because journalists may discuss legal matters using "popular or lay terminology" rather than the "technical legal terminology employed by courts.").  Here, the word "partner" simply conveys that Mr. Broidy was a material owner of a small company.  Its gist is no different than referring to him as a 16% shareholder with a representative on the Board, which the Article also does.

[5]  Finally, although again it is not necessary to reach, the term "secret partner"—which after publication was changed in response to complaints on behalf of Plaintiff (Compl. ¶ 22)—would also not be actionable for the independent reason that it is protected opinion.  It is well-established that "statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions."  *Turner*, 879 F.3d at 1262.  "Whether the statement is one of fact or opinion … [is a] question[] of law for the court," and courts routinely grant motions to dismiss defamation claims at the pleading stage when the claim arises from subjective statements. *Id.* at 1263-64; *see also Vibe Ener v. Duckenfield*, 2020 WL 6373419, at \*8 (S.D. Fla. Sept. 29, 2020).  Under Florida law, subjective statements are not actionable when they are "based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public."  *Turner*, 879 F.3d at 1262 (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)).  Here, characterizing Mr. Broidy as a "secret partner" in KOIOS is quintessential opinion.  The Article identifies all other KOIOS shareholders by their personal names, while only Mr. Broidy was not actually a shareholder himself.  Whether or not that makes him a "secret" partner, or secret shareholder, is a subjective characterization based on "facts available to the reader . . . [and] therefore, is not actionable." *Vibe Ener*, 2020 WL 6373419, at \*8.

Two paragraphs within the Complaint also reference one or two other sentences in the Article. Those sentences appear within what is essentially a three-paragraph section of the Article, which are set forth below to provide their context:

> Broidy was known as one of the most vocal critics of Qatar and its influence in the U.S. and the West. A New York Times investigation from 2018 revealed that Broidy, along with George Nader, a Lebanese-American businessman, promoted the interests of the United Arab Emirates and Saudi Arabia in the U.S. and tried to influence Trump's policy toward Iran and Qatar. According to the article he allegedly received contracts in the UAE.

> The investigation was based on Broidy's emails that were leaked to the media – a leak Broidy later said was done on Qatar's behalf. In the emails, which were also leaked to the BBC and other outlets, Broidy wrote to Trump that "the axis of evil is North Korea, Iran, and Qatar," referring to Al Jazeera as a "state-owned television station."

> In 2018, Broidy sued three lobbyists and a former CIA agent, claiming they had helped Qatar hack into his emails as revenge for his criticism of Qatar as a state sponsor of terrorism.

Siegel Decl. Ex. 1 at 6-7. The Complaint appears to reference one or two sentences within the first paragraph, that begin with "[a] New York Times investigation." The Complaint alleges those sentences "mischaracteriz[ed] assertions" made in the 2018 *Times* story, and in so doing accuse Mr. Broidy of "what amounts to criminal conduct." Compl. ¶ 21; *see also id. ¶* 6. Specifically, the Complaint alleges that the *Times* did not report, and Mr. Broidy did not in fact, "promote the interests of the UAE or Saudi Arabia or otherwise work on behalf of either nation[.]" *Id.* ¶ 21. The "criminal conduct" Plaintiff alleges this "mischaracterization" implicitly "amounts to" is a failure to register under the Foreign Agents Registration Act ("FARA"). *Id.*

This allegation is meritless for several reasons. It is not clear whether the Complaint intends to assert a claim for defamation *per se*, defamation by implication, or both based on these sentences, but it does not matter because either theory would fail as a matter of law. Defamation *per se* claims must rest upon statements that "on their face and without the aid of extrinsic proof" are defamatory. *Boyles v. Mid-Fla. Television*, 431 So. 2d 627, 633 (Fla. 5th DCA 1983), *approved*, 467 So. 2d 282 (Fla. 1985). Nothing on the face of the Article accuses Mr. Broidy of any criminal conduct (or asserts that the *Times* did), let alone any violation of FARA. Positing a connection between this shorthand reference to another newspaper's reporting and FARA imports into the Article a host of "extrinsic" facts and even specialized legal knowledge that are nowhere

to be found within the four corners of the Article itself. *See Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1260 (S.D. Fla. 2021) (dismissing defamation *per se* claim where plaintiff referenced extrinsic evidence outside the four corners of the publication to support his claim).[6]

That conclusion is further reinforced when the brief reference to the *Times* story is considered in context, as Florida law requires. *Bongino*, 477 F. Supp. 3d at 1317. That reference appears within three paragraphs, whose purpose is to provide an example of how Mr. Broidy became "one of the most vocal critics of Qatar." The *Times* story is briefly summarized to explain how it became the catalyst for a larger public battle between Mr. Broidy and Qatar in 2018. The Article recounts how the *Times* story was based on Mr. Broidy's emails that had been hacked and then leaked to the media. The Article reports that he publicly lambasted Qatar for the leak and sued several persons he alleged helped Qatar hack into his emails. Thus, if there is any reference to any crime or tort in connection with those events, it is to Mr. Broidy's lawsuit alleging that he was the victim of illegal or tortious hacking. In short, the Article is not reasonably susceptible to the alleged defamatory meaning that Mr. Broidy violated FARA.

The same result would apply to a claim for defamation by implication, which appears to be essentially what the Complaint alleges—that the Article accuses Mr. Broidy of "what amounts to" a crime. Compl. ¶ 21. That theory must be dismissed for the same reasons—those words do not state or imply that Mr. Broidy violated FARA. Moreover, an implication claim also fails on its face because once again, the Complaint premises the alleged implication on the claim that the Article *falsely* reports what the *Times* reported. Compl. ¶ 21.

In short, the Complaint should be dismissed because the Article does not reasonably convey any of the defamatory meanings it alleges.[7]

### 3. The Complaint Fails to Plausibly Allege Haaretz Published the Article with Actual Malice

---

[6] Such extrinsic information would include connecting those words in the Article to FARA, understanding the elements of a FARA violation, and knowing whether or not Mr. Broidy registered under FARA. The reference to the *Times* story does not mention FARA. Nor, in any event, does "promot[ing] the interests" of a country equate to a FARA violation. A FARA violation would require that Mr. Broidy acted "at the direction of or under the control of" the UAE or Saudi Arabia, and that he failed to "notify the Attorney General" that he was doing so. *See United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010). The Article speaks to none of that.

[7] Finally, although the Court need not reach this question, here too the premise of these allegations is also demonstrably incorrect. The Article does not "mischaracterize" the *Times* story. The *Times* story, which is also incorporated by reference, was entitled "How 2 Gulf Monarchies

The Complaint also fails to plausibly plead a defamation for another, independent reason. Mr. Broidy is at least a limited public figure and the Complaint does not and could not plausibly plead that Defendant acted with actual malice.

### a.   Mr. Broidy is a Public Figure

"[T]he First Amendment requires the public figure plaintiff to demonstrate by clear and convincing evidence that the alleged defamatory statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Moore*, 109 F.4th at 1365 (internal quotation marks omitted); *accord Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1193 (11th Cir. 2025), *pet. for cert. filed,* 25-770 (U.S. Dec. 31, 2025). "Determining whether an individual is a public figure—and thus subject to the actual malice analysis—is a question of law for the court to decide." *Michel*, 816 F.3d at 702 (citing *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1247 (5th Cir. 1980)).  Accordingly, courts regularly make this determination on motions to dismiss. *See, e.g., Turner*, 879 F.3d at 1271-73; *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1309-10 (M.D. Fla. 2021), *aff'd,* 2021 WL 5858569, at *6  (11th Cir. Dec. 10, 2021).

Defamation law recognizes two types of public figures. General public figures are "individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Turner*, 879 F.3d at 1272.  "Limited public figures, on the other hand, are individuals who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Id.*; *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020).  The Eleventh Circuit applies a three-part test to determine whether someone is a limited public figure.  "[T]he court must (1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether the alleged defamation [was] germane to the plaintiffs' participation in the controversy." *Silvester v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988) (internal quotation marks omitted). Here, the Court need not resolve whether Mr. Broidy is a general public figure, because the Complaint sets forth why, at a minimum, he is a limited public figure for purposes of this case.

Sought to Influence the White House," and its lead sentence describes Mr. Broidy as "an instrument of influence at the White House for the rulers of Saudi Arabia and the United Arab Emirates."  Siegel Decl. Ex. 10.  The brief summary of that story in the Article is not a materially false characterization of the *Times* report.

*See Michel*, 816 F.3d at 702-703; *Southbark, Inc. v. Mobile County Comm.*, 974 F. Supp. 2d 1372, 1382-83 (S.D. Ala. 2013).

The Complaint alleges that his "advocacy and positions regarding the Middle East", and most especially his public criticism of Qatar including "a long history of publicly clashing with Qatar" and "his very public background as a litigant against Qatar and its agents", all "have attracted widespread approval and attention." Compl. ¶¶ 1, 2, 8. The Complaint also alleges the allegedly defamatory Article portrayed Mr. Broidy's vocal participation in those public controversies as hypocritical. *Id.* ¶¶ 2, 14. Those allegations establish that he is a limited public figure. *Button v. McCawley*, 2025 WL 50431, *9 (S.D. Fla. Jan. 8, 2025) ("Florida courts have found that individuals who "put themselves in the public arena" are public figures for defamation purposes" and allegations of the complaint demonstrate that status).

As those allegations indicate, Qatar, and more specifically debate over whether Qatar should be regarded as a friend, foe or somewhere in between, has long been a public controversy. *Silvester*, 839 F.2d at 1494-5 (a public controversy is one "was being debated publicly" and whose resolution "will affect people who do not directly participate in it"); *see also* Siegel Decl. Exs. 25-28 (collecting examples of public debate regarding Qatar).[8] Similarly, as the Complaint alleges, Plaintiff's personal clashes with Qatar, including his "very public background" as a litigant

---

[8] "When a court rules on a Rule 12(b)(6) motion to dismiss, it 'must consider the complaint in its entirety, as well as ... matters of which a court may take judicial notice.'" *Bilal v. Benoit*, 2025 WL 3240264, at *4 (11th Cir. Nov. 20, 2025) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). "[C]ourts may take judicial notice of documents such as newspaper articles and information on publicly available websites" as long as they are not asked to "determin[e] the truth of" those documents. *United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1291 (M.D. Fla. 2018). As a result, in addition to the allegations of the Complaint, to determine whether a plaintiff is a public figure courts regularly take judicial notice of and consider the existence of documents like media reports and public records   This includes news articles and social media posts in defamation cases. *See, e.g.*, *Jacoby*, 2021 WL 5858569, at *4 (affirming dismissal and citing news reports in the record to affirm that plaintiff was a limited public figure); *See e.g., Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 132 n.1 (D.D.C. 2016) (taking judicial notice of "news articles ... not for their truth but merely for the fact they were published" and finding plaintiff to be a limited public figure); *Prince v. Intercept*, 634 F. Supp. 3d 114, 134, 137–38 (S.D.N.Y. 2022) (private military contractor who wrote articles and gave interviews was limited purpose public figure); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 507 (W.D. Va. 2019). In this case the Complaint and the Article alone suffice to establish Mr. Broidy's limited public figure status, but in the event the Court may wish to consider any additional, judicially noticeable information it is also provided herein.

accusing Qatar and its alleged agents of retaliating against him and his anti-Qatar lobbying efforts discussed in the *New York Times* story referenced in the Article, themselves became a subject of widespread public discussion. *Jacoby*, 2021 WL 5858569 at *3 (holding that either of two controversies established the plaintiff's status as a limited public figure); *see also* Siegel Decl. Exs. 10, 24, 29-30 (collecting examples of news reports regarding Plaintiff's clashes with Qatar and anti-Qatar lobbying efforts).

With respect to the second element of the test, the "plaintiff either (1) must "purposely [try] to influence the outcome" of the public controversy, or (2) "could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Silvester,* 839 F.2d at 1496. The Complaint's characterization of Mr. Broidy's public "advocacy" and resulting public attention describes the heart of what defines a limited public figure, and indeed the Article recounts some of the history of his anti-Qatar advocacy. *Turner*, 879 F.3d at 1272 (plaintiff who "chose to put himself in the public arena" was a limited public figure); *see also* Siegel Decl. Exs. 10, 12, 24, 29-30. Finally, the gravamen of the entire Complaint is that the Article is germane to Mr. Broidy's participation in these controversies, because it allegedly states or implies that participation was hypocritical.

For all these reasons, Plaintiff is a limited public figure for purposes of this case.

> **b.    The Complaint Does Not Plausibly Plead Actual Malice**

As a public figure, Mr. Broidy was required to plead facts sufficient to plausibly support a finding of actual malice. "A showing of actual malice requires sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, or that he acted with a high degree of awareness of probable falsity." *Dershowitz*, 153 F.4th at 1193 (internal quotation marks omitted). This requirement is a purely subjective standard. *Michel*, 816 F.3d at 702-03 (the standard "is not an objective one and the beliefs or actions of a reasonable person are irrelevant."). "Malice" in the sense of ill will towards the plaintiff is also not actual malice. *Dershowitz*, 153 F.4th at 1193 ("Speakers' feelings about their subjects are irrelevant—all that matters are the speakers' subjective beliefs about the truth of their own statements.").

The Eleventh Circuit has explicitly held that "the plausibility pleading standard applies to the actual malice standard in defamation proceedings", noting that *Iqbal* itself held that subjective standards like malice are subject to the plausibility standard. *Michel*, 816 F.3d at 702 (affirming dismissal for failure to plausibly plead actual malice); *Tovarian v. Rubic, LLC*, 2025 WL 747435,

17

\* 3 (S.D. Fla. Nov. 13, 2024) (Cannon, J) (applying plausibility standard to the element of actual malice).  As a result, courts in this Circuit (as well as others) regularly grant motions to dismiss defamation actions at the pleading stage for failure to adequately allege facts that could plausibly support actual malice. *See, e.g.*, *Reed v. Chamblee*, 2025 WL 1874638, at \*3 (11th Cir. July 8, 2025); *Jacoby,* 2021 WL 5858569, at \*6; *Turner,* 879 F.3d at 1273-74.

Here, the Complaint recites the boilerplate elements of actual malice, but fails to plead any facts to plausibly plead that Haaretz acted with actual malice.  *See, e.g.*, Compl. ¶¶ 7, 8, 24; *see also Jacoby*, 537 F. Supp. 3d at 1312 (dismissing defamation claim where plaintiff made mere conclusory allegation of actual malice rather than alleging "sufficient facts showing that Defendants 'entertained serious doubts' as to the truth of the articles").  Indeed, the only facts pled to in support of those conclusory allegations are that Haaretz removed the word "secret" when referring to Mr. Broidy as a "partner," following demands for a correction by his representatives.  Compl. ¶¶ 3, 22.  But if relevant at all, courts recognizes that an openness to making such changes "weighs against malice." *Nelson Auto Center, Inc. v. Multimedia Holdings Corp*., 951 F.3d 952, 958-59 (8th Cir. 2020).  More broadly, this Circuit has emphasized that including in an article information that supports the plaintiff's perspective "should be interpreted as helping to rebut, not establish, the presence of actual malice." *Michel*, 816 F.3d at 703.  As discussed *supra*, the Article is replete with such information.

For these reasons, Plaintiff has not plausibly pled—nor could he—that Haaretz acted with actual malice.  Plaintiff's defamation claim against Haaretz should therefore be dismissed with prejudice.

## IV.   CONCLUSION

For all the reasons set forth in this Motion, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated: January 20, 2026 Respectfully submitted,

SHULLMAN FUGATE PLLC DAVIS WRIGHT TREMAINE LLP

s/ Yelan Escalona
Deanna K. Shullman (Fla. Bar No. 514462)
Yelan Escalona (Fla. Bar No. 1031564)
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411

s/ *Nathan Siegel*
Nathan Siegel (*pro hac vice* forthcoming)
Marietta Catsambas (*pro hac vice* forthcoming)
1301 K St. NW, Suite 500E

18

(561) 429-3619
dshullman@shullmanfugate.com
yescalona@shullmanfugate.com

Washington, DC 20005
(202) 973-4200
nathansiegel@dwt.com
mariettacatsambas@dwt.com

Ryan W. Hicks (*pro hac vice* forthcoming)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
(212) 489-8230
ryanhicks@dwt.com

*Counsel for Defendant*
*Haaretz Daily Newspaper Limited*