**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**ELLIOTT BROIDY,**

**Plaintiff,**

v.                                          **Case No.: 9:25-cv-81295-AMC**

**HAARETZ DAILY NEWSPAPER LTD,**

**Defendant.**

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

BARTLETT LOEB HINDS
THOMPSON & ANGELOS

ETHAN J. LOEB
Fla. Bar No.: 0668338
EDWARD COLIN THOMPSON
Fla. Bar No.: 0684929
1001 Water Street, Suite 475
Tampa, Florida 33602
Phone: (813) 223-3888
Fax: (813) 228-6422
EthanL@BLHTlaw.com
KerriR@BLHTlaw.com
Eservice@BLHTlaw.com
ColinT@BLHTlaw.com
HeatherW@BLHTlaw.com

HERSCHMANN BENSON
BOWEN LLP

DANIEL R. BENSON (admitted *pro hac vice*)
NY Bar No.: 1712223
RYAN A. BERGER (*pro hac vice*
forthcoming)
NY Bar No.: 5573118
305 Broadway FL 7
New York, NY 10007-1188
Phone: (917) 341-4628
DBenson@hbb-firm.com
RBerger@hbb-firm.com

*Attorneys for Plaintiff Elliott Broidy*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................ 1

I.     FACTS .................................................................................................................................. 5

II.    LEGAL STANDARD............................................................................................................ 9

III.   ARGUMENT ...................................................................................................................... 10

IV.   CONCLUSION................................................................................................................... 188

## **TABLE OF AUTHORITIES**

***CASES***                                                                                                      ***PAGE***

*In re Air Crash Over S. Indian Ocean*,
    352 F. Supp. 3d 19 (D.D.C. 2018) ...................................................................... 17

*Bos. Telecommunications Grp., Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ........................................................................ 12

*Burt v. Isthmus Dev. Co.*,
    218 F.2d 353 (5th Cir. 1955) ..................................................................... 10, 11

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000) ............................................................... 12

*Clerides v. Boeing Co.*,
    534 F.3d 623 (7th Cir. 2008) ..................................................................... 13, 16

*Conflict Kinetics, Inc. v. Goldfus*,
    577 F. Supp. 3d 459 (E.D. Va. 2021) ............................................................... 16

*Core Software Tech., Inc. v. ImageSat Int'l N.V.*,
    No. 08 CIV. 7017 (DC), 2010 WL 21173 (S.D.N.Y. Jan. 5, 2010) ................................ 14

*D'Onofrio v. Il Corriere Della Sera*,
    373 F. Supp. 2d 555 (E.D. Pa. 2005) ............................................................... 17

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ........................................................................ 13

*Fagan v. Deutsche Bundesbank*,
    438 F. Supp. 2d 376 (S.D.N.Y. 2006) ............................................................... 17

*Fletcher v. Doig*,
    125 F. Supp. 3d 697 (N.D. Ill. 2014) ............................................................ 3, 13

*Foshee v. Banks*,
    No. 22-11321, 2022 WL 17547200 (11th Cir. Dec. 9, 2022) ........................................ 16

*Fresh Results, LLC v. ASF Holland, B.V.*,
    921 F.3d 1043 (11th Cir. 2019) ..................................................................... 9

*Fudge v. Alliant Foodservice, Inc.*,
    No. CV010812056S, 2002 WL 1903095 (Conn. Super. Ct. July 12, 2002) ........................... 12

ii

*Gross v. Brit. Broad. Corp.*,
    386 F.3d 224 (2d Cir. 2004)...................................................................... 18

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501; 67 S. Ct. 839; 91 L. Ed. 1055 (1947)......................................... 9

*Implamed-Implantes Especializados, Comercio, Importacao E Exportacao Ltda. v. Zimmer, Inc.*,
    No. 06-21444, 2007 WL 9703128 (S.D. Fla. May 25, 2007)........................... 15

*Interface Partners Int'l Ltd. v. Hananel*,
    575 F.3d 97 (1st Cir. 2009)................................................................... 16

*Israel Disc. Bank Ltd. v. Schapp*,
    505 F. Supp. 2d 651 (C.D. Cal. 2007) ........................................................ 17

*Lambert v. Melia Hotels Int'l S.A.*,
    526 F. Supp. 3d 1207 (S.D. Fla. 2021) ..................................................... 16

*Leon v. Millon Air, Inc.*,
    251 F.3d 1305 (11th Cir. 2001) ........................................................ 9, 9, 13, 16

*Leukemia & Lymphoma Soc'y, Inc. v. Walter & Eliza Hall Inst. of Med. Rsch.*,
    No. 22 CIV. 10690, 2024 WL 3876353 (S.D.N.Y. Aug. 20, 2024) .................. 12

*Manela v. Garantia Banking Ltd.*,
    940 F. Supp. 584 (S.D.N.Y. 1996)........................................................... 13

*McLane v. Marriott Int'l, Inc.*,
    960 F. Supp. 2d 1351 (S.D. Fla. 2013) ...................................................... 16

*Metito (Overseas) Ltd. v. Gen. Elec. Co.*,
    No. 05 CIV. 9478; 2006 WL 3230301 (S.D.N.Y. Nov. 7, 2006)................... 3, 12

*Montgomery v. Oberti*,
    945 F. Supp. 2d 1367 (S.D. Fla. 2013) ...................................................... 16

*Otto Candies, LLC v. Citigroup, Inc.*,
    963 F.3d 1331 (11th Cir. 2020) ............................................................. 2, 10

*Path to Riches, LLC on behalf of M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*,
    290 F. Supp. 3d 280 (D. Del. 2018)........................................................... 17

*Philipps v. Metro. Prop. & Cas. Ins. Co.*,
    No. 07-20766-CIV, 2007 WL 9702710 (S.D. Fla. June 22, 2007).................. 17

*S.R.J. v. Marriott Int'l, Inc.*,
    No. 2:21-CV-1863, 2022 WL 11306888 (W.D. Pa. Oct. 19, 2022) ................................ 16

*Shu v. Wang*,
    No. CV 10-5302, 2016 WL 6080199 (D.N.J. Oct. 17, 2016) ........................................ 17

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) .................................................................................................. 9

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
    382 F.3d 1097 (11th Cir. 2004) ........................................................................ 10, 11

*Smith v. Trans-Siberian Orchestra*,
    728 F. Supp. 2d 1315 (M.D. Fla. 2010) ........................................................... 3, 14

*Tagger v. Strauss Grp. Ltd.*,
    No. 18-CV-2923 (BMC), 2018 WL 4356725 (E.D.N.Y. Sept. 12, 2018) ..................... 16

*Tazoe v. Airbus S.A.S.*,
    631 F.3d 1321 (11th Cir. 2011) ...................................................................... 13, 16

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) .................................................................................. 14

Plaintiff Elliott Broidy ("Broidy") respectfully submits this memorandum of law in opposition to the motion (ECF No. 11) (the "Motion") of defendant Haaretz Daily Newspaper Ltd. ("Haaretz") to dismiss his complaint (ECF No. 1) (the "Complaint") on *forum non conveniens* grounds.

## PRELIMINARY STATEMENT

Elliott Broidy, a resident of this District, has brought this action to vindicate his reputation from Haaretz's egregious, politically motivated defamation in an article Haaretz, Israel's leftwing newspaper, disseminated not in Hebrew and not in Israel, but in English and in the United States, including in Florida.  As alleged in the Complaint, Haaretz, trying to advance its leftwing political agenda, targeted Mr. Broidy, a longtime supporter of and fundraiser for President Trump, by intentionally or recklessly defaming Mr. Broidy with the egregiously false proposition that Mr. Broidy was involved in and profited from an allegedly criminal "pro-Qatar PR campaign" in Israel. And Haaretz did so, not just in an article on its Hebrew-language website read primarily in Israel, but in a materially different article on its widely read, lucrative, and distinct English-language website, Haaretz.com, specifically and primarily targeted to Jewish readers in the United States, including in Florida, home to the third-largest Jewish population in the country (facts that Haaretz does not, and cannot, dispute).

Try as Haaretz does to muddy the waters, this is a straightforward defamation case that presents no complicated factual issues requiring extensive discovery.  Discovery and evidence on the relevant issues will be straightforward—all, or substantially all, of the discoverable documents, such as Haaretz's communications and other documents relating to its English-language article, are no doubt electronic and can be easily produced, and to the extent they are in Hebrew, they can be easily translated.  Indeed, given the fact that Mr. Broidy himself does not speak Hebrew, any such Hebrew documents that Haaretz will attempt to enter into the record (regardless of whether

1

before this Court or an Israeli court) will need to be translated into English, so that Mr. Broidy can effectively participate in his own lawsuit.

Haaretz has no evidence and will be unable to uncover during discovery any evidence to explain away its politically motivated defamation of Mr. Broidy because there is no such evidence. Regardless, discovery and depositions, as necessary and appropriate, can easily be conducted in Israel, the United States (where Haaretz has offices), and in Florida, where Haaretz's defamation of Mr. Broidy (a Florida resident) was most severely felt.  In fact, as Haaretz points out, the potential Israeli witnesses speak English.  And, to the extent witnesses cannot be compelled to appear in person at trial (which would be an issue if the case were in Israel as well), courts and parties have readily adopted measures, such as video appearances, to remedy any such issue.

The Eleventh Circuit's decision in *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331 (11th Cir. 2020) is dispositive that the Motion to remove this case from this District, where Mr. Broidy resides, in favor of an Israeli court must be denied.  Under *Otto Candies*, to prevail on such a motion to remove a case from the district where the plaintiff resides, a defendant must offer "positive evidence of unusually extreme circumstances," and the district court must be "thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country."  *Id*. at 1339 (citation omitted).

Here, Haaretz does not offer anything close to "manifest" "material injustice" or "unusually extreme circumstances."  *Id*.  It is certainly not unjust or unusually extreme for Haaretz to have to answer in this Court for its article targeting Mr. Broidy, who, as it knew[1], resides and works in Florida and is a member of and has significant ties to Florida's large Jewish community, one of

---

[1] Haaretz's article itself reported that "[a]ccording to the Florida company registry, the owner of RLN Holdings of Delaware is Broidy."

the principal audiences for Haaretz's English website.  As noted, the logistical issues Haaretz raises are easily remedied, and none of them, particularly in this digital day and age, comes close to an "injustice" or "unusually extreme circumstances."  *See, e.g., Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05 CIV. 9478(GEL), 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006) (denying dismissal on *forum non conveniens* grounds and noting "modern technologies can make the location of witnesses and evidence less important to the *forum non conveniens* analysis, particularly where the parties are major corporations").  *See also Fletcher v. Doig*, 125 F. Supp. 3d 697, 713 (N.D. Ill. 2014) (denying dismissal on *forum non conveniens* grounds and noting "non-party witnesses could be compelled to give video depositions via the letters rogatory process").  And, of course, modern technologies have dramatically advanced since those decisions were rendered.

Haaretz's principal argument seems to be that "[t]his case arises because of [Mr. Broidy's] ownership share and involvement in an Israeli company…."  (Motion at 1).  But that is not so. This case arises because Haaretz chose to defame Mr. Broidy, chose to do so in English, and chose to disseminate that defamation in Florida, including in this District.  Equally off the mark is Haaretz's assertion that Israeli courts have a "much greater interest" (*id.*) in this dispute than courts in the jurisdiction where Mr. Broidy lives, works, and has been injured by Haaretz's conduct.  In fact, Israeli courts have no particular interest in Mr. Broidy's reputation.  And, as the courts in this country regularly hold, the jurisdiction where the injury from torts such as defamation occurs has by far the greatest interest in adjudicating such disputes.  *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1324 (M.D. Fla. 2010) ("states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents").

One key reason Haaretz so strongly prefers to litigate in Israel instead of this District is clear: Haaretz, "easily the most liberal newspaper in Israel and arguably the most important liberal institution in [Israel],"[2] which has been said to "disregard[] the facts and distort[] truth" on account of "its far-left political bias,"[3] and prompted its own government to "impose[] sanctions," "cut[] all ties," and "pull advertising"[4] from it as a result, knows that it has a staunch ally in the form of the "unapologetically left-wing liberal" Israeli Supreme Court and judiciary.[5]  As a non-Israeli with close ties to President Trump and Prime Minister Netanyahu (foes of Haaretz and the Israeli judiciary) and without ties to Israel's liberal elites (including its judiciary) that Haaretz has, Mr. Broidy would have a potentially insurmountable obstacle to overcome in seeking justice in Israel.

Having launched this attack on a Florida resident and refused to properly correct its defamatory statements—most of which Haaretz continues to circulate—Haaretz should not be heard to argue that Mr. Broidy is not entitled to vindicate his reputation in the State and District where he lives and works and where the reputational harm to him has been and continues to be focused.  Haaretz has not come close to carrying its heavy burden to overcome the strong

---

[2] The Dissenters | The New Yorker (www.newyorker.com/magazine/2011/02/28/the-dissenters); *see also* "Haaretz faces blowback after liberal Israeli paper's publisher chides Israel for battling 'Palestinian freedom fighters'" - Jewish Telegraphic Agency (www.jta.org/2024/11/04/israel/haaretz-faces-blowback-after-liberal-israeli-papers-publisher-praises-palestinian-freedom-fighters).

[3] "'Haaretz' disregards the facts and distorts truth" - JNS.org (www.jns.org/haaretz-disregards-the-facts-and-distorts-truth/).

[4] "Israeli Government Imposes Sanctions on Haaretz, Cuts All Ties and Pulls Advertising" - Israel News (www.haaretz.com/israel-news/2024-11-24/ty-article/.premium/israeli-govt-to-cut-ties-with-haaretz-over-publishers-remarks-on-freedom-fighters/00000193-5e5c-d68e-a1db-fe5c54cf0000).

[5] "A crisis of judicial proportions explained: Why is Israel rocked by political turbulence?" – www.israelhayom.com (www.israelhayom.com/2023/04/02/a-crisis-of-judicial-proportions-explained-part-i-reforming-the-supreme-court/) ("Of the 15 Supreme Court justices, four are considered moderately conservative and 11 are liberal.  By contrast, there are 70 conservative Knesset Members to 40 liberals.  Israel is a right-wing country with a left-wing court."); *see also* Israel's Activist Court – Daniel J. Samet (lawliberty.org/book-review/israels-activist-court/) ("a rather strong case that the country's Supreme Court, as well as the entire judiciary, exercises undue powers … Israel's Supreme Court, he avers, 'has methodically and unilaterally accrued political power at the expense of the elected and accountable branches of government to devastating effect.'  He has one word that sums up the Israeli judiciary: 'lawlessness.'  The picture that emerges is a judiciary, and especially a Supreme Court, that has taken many of the powers that rightfully belong to the Knesset.").

presumption in favor of Mr. Broidy's preferred choice of his home forum as a United States citizen.

## I.   FACTS

This action arises from an egregiously false and defamatory article Haaretz published, and continues to publish, concerning Mr. Broidy, a Florida businessman who has contributed his time, resources, and advocacy to foreign policy issues, combating terrorism, and advancing U.S. national security.  His advocacy, including his past litigation with Qatar, has attracted widespread approval and attention and is of significant importance to his reputation and standing, particularly in the Florida community in which he lives and works.  Complaint at ¶ 1.

The defamatory article, entitled "Elliott Broidy, GOP Fundraiser Pardoned by Trump, Is Secret Partner in Firm Behind pro-Qatar Campaign," is still accessible in substantially the same form.[6]  As reflected in its (original and revised) title, it promulgates the egregiously false proposition that Mr. Broidy was involved in and profited from a "pro-Qatar PR campaign" in Israel "operated" by a firm identified in the article as KOIOS—an alleged campaign that is the subject of a widely publicized criminal investigation and prosecution in Israel.  The article also deliberately and repeatedly sought to portray Mr. Broidy as a hypocrite, given that he had been a litigant against Qatar and its agents.

Haaretz owns and controls a widely read and lucrative English-language website, Haaretz.com, which operates as separate and distinct from Haaretz.co.il, its Hebrew-language news service.  Haaretz.com specifically and primarily targets Jewish readers in the United States,

---

[6] As of this filing, the headline of the article has been changed slightly to: "Elliott Broidy, anti-Qatar GOP Fundraiser Pardoned by Trump, Linked to Firm Behind pro-Qatar Campaign."  The URL, itself defamatory, remains unchanged and includes the original headline.  *See* https://www.haaretz.com/israel-news/2025-09-01/ty-article-magazine/.premium/elliott-broidy-gop-fundraiser-is-secret-partner-in-firm-behind-pro-qatar-campaign/00000199-066e-dd48-a79b-bffefbdd0000 (last visited February 26, 2026)

including in Florida, home to the third-largest Jewish population in the country.[7]  *Id.* at ¶ 2.
Subscriptions to the English website are denominated in U.S. dollars, not Israeli shekels, as with
the Hebrew website.  Haaretz intentionally markets Haaretz.com to readers in the United States,
sells advertising space in the United States through at least one U.S.-based company, sponsors
conferences in the United States, conducts significant business operations in the United States, and
has over a dozen personnel based in the United States, including correspondents and its Deputy
Publisher.  *Id.* at ¶ 15.

   Haaretz knew and intended that its defamatory article—which differed materially from the
version on Haaretz's Hebrew website—would be read and would damage Mr. Broidy's reputation
in Florida, including with, among other Florida residents, the Florida Jewish community.  As a
result of Haaretz publishing the defamatory article, Mr. Broidy's business associates and
acquaintances in Florida have read the article and raised it with him. *Id.* at ¶ 2.  In fact, for example,
of special importance to Mr. Broidy from a reputational and business point of view is President
Trump's Mar-a-Lago Club located within this District, of which Mr. Broidy is a member, and
which includes on its membership roster the President's Jewish daughter and son-in-law, along
with many other prominent members of Florida's Jewish community.

   Contrary to the defamatory article, Mr. Broidy had no knowledge of or involvement with,
and never received any compensation or other benefit from, the PR campaign.  Neither Mr. Broidy
nor his KOIOS board nominee, Nathan Miller, was informed or learned of the PR campaign before
it was reported in the press.  Neither of them knew or had reason to know of the campaign or of

---

[7] **Jewish Population by US State 2025 | Statistics & Facts - The World Data** (theworlddata.com/jewish-population-by-us-state/) (after New York and California, Florida has the largest Jewish population by U.S. state with over 750,000).

any alleged role of KOIOS's principals or employees in the campaign.  Haaretz does not claim to have any evidence suggesting otherwise.  *Id.* at ¶ 3.

Nor was Mr. Broidy ever a "secret partner" in KOIOS, as Haaretz originally falsely reported, falsely implying that he was a secret participant in KOIOS's allegedly illicit activities. Haaretz has never changed its URL link to the article, https://www.haaretz.com/israel-news/2025-09-01/ty-article-magazine/.premium/elliott-broidy-gop-fundraiser-is-secret-partner-in-firm-behind-pro-qatar-campaign/00000199-066e-dd48-a79b-bffefbdd0000, which continues to perpetuate the defamatory falsehood that Mr. Broidy was a "secret partner" involved in the alleged PR campaign.  As a result of Haaretz's defamation, the same falsehood has been and continues to be published in numerous links on other websites, as well as on the X social media accounts of the reporters who wrote the defamatory article.  *Id.* at ¶ 4.

Moreover, tweets posted by Haaretz and its reporters on X linking the article through social media further evidence Haaretz's defamatory smear campaign against Mr. Broidy.  Those tweets make reference to, among other defamatory statements, an "exposé" of Mr. Broidy and that he "was a vocal critic of Qatar" but that they can now "reveal he is also a secret partner in an Israeli firm that ran a PR campaign for Qatar."  One such tweet even falsely stated that Mr. Broidy's board nominee only resigned from KOIOS's board one month after the issue came to light publicly, which is flagrantly incorrect (as Haaretz knows)—one month later is merely when Nathan Miller's resignation was formally processed in the Israeli corporate registry.  *See* Ex. 1.

Haaretz continues to falsely state in the article that Mr. Broidy was a "partner" in KOIOS, connoting that Mr. Broidy was actively involved in the company's operations, which Haaretz also knows is false.  In fact, Mr. Broidy was never a partner at all but merely a passive shareholder in KOIOS, and after learning of the alleged actions of certain KOIOS personnel from Haaretz's

reporting, he triggered a liquidation of the company to unwind his investment.  And while Haaretz added Mr. Broidy's denial to the article, it did so in a manner falsely suggesting that Haaretz had evidence to the contrary, which it did not and could not have had, and the article continues to promulgate the same falsehood.  As noted, Haaretz continues to this day to publish on its X social media account the headline of and link to the article.  *Id.* at ¶ 5, and continues to state on the landing page of the article, next to a picture of Mr. Broidy that is available to the public at large before the paywall, that Mr. Broidy "became a partner in the firm in 2023 and holds 16% of its shares," a demonstrably false statement.[8]

Mr. Broidy demanded that Haaretz withdraw the article, issue a correction, and publicly apologize.  Other than the utterly inadequate revisions referred to above, Haaretz has refused to do so.  Thus, having published the article throughout the United States, including in English on its own website and on Apple News, Haaretz plainly did so and continues to do so with actual knowledge of, or at a minimum with reckless disregard for, the falsity of its statements concerning Mr. Broidy.[9]  *Id.* at ¶ 7.

Haaretz's motive for doing so is plain: its leftwing reporting and editorial stance are harshly critical of President Trump (and Israeli Prime Minister Netanyahu), with whom Mr. Broidy has long been closely and prominently associated.  Given Mr. Broidy's status as a longtime supporter of and donor to President Trump, Haaretz prominently mentions him in the article's headline and sub-headline, shoehorning in a reference to the President even though he has nothing to do with

---

[8] https://www.haaretz.com/israel-news/2025-09-01/ty-article-magazine/.premium/elliott-broidy-gop-fundraiser-is-secret-partner-in-firm-behind-pro-qatar-campaign/00000199-066e-dd48-a79b-bffefbdd0000 (last visited February 26, 2026)

[9] Another Israeli publication, Calcalist (a leading financial daily newspaper) similarly published Haaretz's defamatory article on September 1, 2025, before later publishing a full retraction and apology on November 11, 2025, noting that the allegations therein ultimately proved unfounded.  www.calcalistech.com/ctechnews/article/v32wdx p0f#google_vignette ("After re-examination, it was found that there is no basis for this story ….  We have retracted the story in its entirety, and we deeply regret any harm and damage our story inflicted upon Mr. Broidy.").

the rest of the article.  It is clear that Haaretz cared more about attacking Mr. Broidy—and through him the President—than it cared about the truth.[10]  *Id.*

## II.    LEGAL STANDARD

The plaintiff's choice of forum, especially that of a U.S. citizen suing in his home forum, receives strong deference and "should rarely be disturbed."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).  "The doctrine should not be invoked 'lightly . . . because it effectively deprives the plaintiff of his favored forum[.]'"  *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019).  Dismissal for *forum non conveniens* is a drastic remedy, for which "[a] defendant has the burden of persuasion as to all elements[.]"  *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

Applying these principles, the Eleventh Circuit, in *Otto Candies*, has held that "[w]ith respect to the private interests [the courts must consider on a *forum non conveniens* motion], courts begin with the presumption that a domestic plaintiff has chosen a sufficiently convenient forum, and it is therefore incumbent upon the defendant 'to prove vexation and oppressiveness that are out of all proportion to the plaintiff's convenience.'"  *Id.* at 1314 (internal quotation marks and citation omitted)."  Further:

> A defendant invoking *forum non conveniens* with respect to a domestic plaintiff therefore "bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  The defendant must offer "positive evidence of unusually extreme circumstances," and the district court must be "thoroughly convinced that material injustice is manifest before exercising any such

---

[10] Indeed, as of the date of this filing, as part of its endless campaign against him and his associates, multiple disparaging articles about President Trump are currently displayed prominently on Haaretz's front page, including: "Trump's SOTU Address Revealed the Cracks in His Administration" ("the arrogance, gaslighting … amid the Epstein files scandal and low approval ratings in the background, Trump's boasts … highlighted the gap between his statements and reality"); "Foul Play: The Real Reason Why FIFA Chief Gianni Infantino Came to Trump's Gaza Board of Peace Launch" ("Infantino's corrupt ingratiation with Trump goes far deeper – and endangers the World Cup itself"); "Battlefield to Ballot Box: How Far Will Trump Go to Get Netanyahu Elected Again?" ("it's natural for frightened folks in Israel to ruminate on the relationship between Donald Trump and Benjamin Netanyahu").  *See* https://haaretz.com (last visited February 26, 2026).

discretion as may exist to deny a United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting *Burt v. Isthmus Dev. Co.*, 218 F.2d 353, 357 (5th Cir. 1955)).

963 F.3d at 1339. *See also Luter, IV v. Scheepswerf Groot-Ammers B.V.*, Case No. 23-CV-80011-AMC (S.D. Fla. 2023) at ECF No. 17, *adopted* at ECF No. 29 (Cannon, J.) (adopting magistrate's recommendation to deny *forum non conveniens* motion, citing *Otto Candies*, and placing special emphasis on the "high burden of showing that this Court should deprive a United States citizen of his chosen forum" and on Florida's "strong interest in policing alleged frauds committed within its territory and in enforcing its own substantive laws.").

## III.    ARGUMENT

As the Complaint makes clear, this is a straightforward defamation case that presents no complicated factual issues requiring extensive discovery.  Any discovery and evidence on the relevant issues will be straightforward—all or substantially all of the discoverable documents, such as Haaretz's communications and other documents relating to its English-language article, are no doubt electronic and can be easily produced, and to the extent they are in Hebrew, they can be easily translated (and will need to be translated regardless of which court ultimately hears this case, given that Mr. Broidy does not speak Hebrew).  Haaretz has no evidence and will be unable to uncover during discovery any evidence to explain away its defamation of Mr. Broidy because there is no such evidence, but in any event discovery and depositions, as necessary and appropriate, can easily be conducted in Israel, the United States (where Haaretz has offices), and in Florida, where Haaretz's defamation was most severely felt.

In fact, as Haaretz points out, the potential Israeli witnesses speak English.  And, to the extent witnesses cannot be compelled to appear in person at trial (which would be an issue if the

case were in Israel as well), courts and parties have readily adopted measures, such as video appearances, to remedy any such issue.

The Eleventh Circuit's decision in *Otto Candies* is dispositive that the Motion to remove this case from this District, where Mr. Broidy resides, in favor of an Israeli court must be denied. Under *Otto Candies*, to prevail on such a motion, (that is, to remove a case from the district where the U.S. plaintiff resides), a defendant must offer "positive evidence of unusually extreme circumstances," and the district court must be "thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *Id.* at 1339 (quoting *SME Racks, Inc.*, 382 F.3d at 1101) (quoting *Burt v. Isthmus Dev. Co.*, 218 F.2d 353, 357 (5th Cir. 1955)).

Here, Haaretz does not offer anything close to "manifest" "material injustice" or "unusually extreme circumstances." *Id.* It is certainly not unjust or unusually extreme for Haaretz to have to answer in this Court in this District where its article targeted Mr. Broidy, who, as it knew, resides and works in Florida and is a member of and has significant ties to Florida's large Jewish community, one of the principal audiences for Haaretz's English website.[11]

---

[11] The "About Haaretz" section of www.haaretz.com states, in part: "In 1997, we launched an English-language edition to cater to growing international interest in Israel and the region.  Haaretz in English provides translations of the original Hebrew content as well as **exclusive articles and analyses tailored specifically for our international audience**."  (Emphasis added).  In fact, Haaretz has published numerous articles of special interest tailored to Florida's Jewish community on www.haaretz.com, including: "Florida's Jews are anxious about Election Day, but not for the reason you'd think"; "Concluding his U.S. visit, Netanyahu tells Florida's Jews how Trump and Biden differ"; "Jordanian in Florida gets 6 years for targeting businesses he thought support Israel"; "A Jewish man in Florida shot two Israelis he thought were Palestinian. What is going on?"; "Jewish groups denounce [Florida] GOP Rep. Randy Fine's 'abhorrent, racist and anti-Muslim remarks'"; "Pro-Israel candidates win key primaries in New York, Florida"; "Three arrested following neo-Nazi attack in Florida"; "In photos: Zeydes and Bubbes living it up in South Florida"; "At least 11 Jews among 46 dead in Florida condo collapse"; "Netanyahu lands in Florida ahead of meeting with Trump"; "[Florida] GOP lawmaker says paid actors behind antisemitic neo-Nazi events in Florida, echoing Musk"; "Florida school district removes book about a Jewish kid with two dads"; "U.S. synagogue sues Florida over new abortion law"; "Netanyahu says 'of course' he will meet Florida's DeSantis during Israel trip"; "Far-right Israeli minister Ben-Gvir arrives in Florida, set to meet Jewish leaders"; "Trump boat parade in Florida features Nazi flags, white supremacist chants."

As noted, the logistical issues Haaretz raises are easily remedied, and none of them, particularly in this digital day and age, comes close to an "injustice" or "unusually extreme circumstances." *See, e.g., Metito (Overseas) Ltd.*, 2006 WL 3230301, at *6 (denying dismissal on *forum non conveniens* grounds and noting "modern technologies can make the location of witnesses and evidence less important to the *forum non conveniens* analysis, particularly where the parties are major corporations"); *see also Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009) (reversing and remanding district court's dismissal on *forum non conveniens* grounds and acknowledging that "both parties will likely be forced to depend on deposition testimony in lieu of live testimony for  at  least  some  witnesses"); *Leukemia & Lymphoma Soc'y, Inc. v. Walter & Eliza Hall Inst. of Med. Rsch.*, No. 22 CIV. 10690 (NRB), 2024 WL 3876353, at *14 (S.D.N.Y. Aug. 20, 2024) (denying dismissal on *forum non conveniens* grounds and noting "although [he] could not be compelled to testify at trial here, he could nonetheless provide testimony through live video conference"); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) ("the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists"); *Fudge v. Alliant Foodservice, Inc.*, No. CV010812056S, 2002 WL 1903095, at *6 (Conn. Super. Ct. July 12, 2002) ("Just as jet travel and satellite communications have significantly altered the meaning of '*non conveniens*' . . . so too has the advent of the videotaped deposition greatly transformed the meaning of 'compulsory process' in a *forum non conveniens* calculus.  Videotaped depositions frequently make corporeal transportation of foreign witnesses unnecessary.").

Nor does any potential need to use letters rogatory to obtain discovery in Israel—a discovery method litigants routinely use—amount to "unusually extreme circumstances" or

"manifest" "injustice." *See, e.g., Fletcher v. Doig*, 125 F. Supp. 3d 697, 713 (N.D. Ill. 2014) (denying dismissal on *forum non conveniens* grounds and noting that "non-party witnesses could be compelled to give video depositions via the letters rogatory process"); *see also DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) (denying dismissal on *forum non conveniens* grounds and noting "we have recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient"); *Manela v. Garantia Banking Ltd.*, 940 F.Supp. 584, 593 (S.D.N.Y. 1996) (denying dismissal on *forum non conveniens* grounds and noting "testimony probably can be secured pursuant to letters rogatory").

Moreover, there would be logistical issues in litigating in Israel as well arising from, among other things, the presence of two of the principal witnesses, Mr. Broidy and Nathan Miller, in the United States, as well as local Florida fact and expert witnesses to testify to Mr. Broidy's damages. *See, e.g., Tazoe v. Airbus S.A.S.*, 631 F.3d 1321 (11th Cir. 2011); *Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008); *Leon*, 251 F.3d 1305 (in addressing *forum non conveniens* motion, considering location of damages witnesses).

Haaretz's principal argument seems to be that "[t]his case arises because of [Mr. Broidy's] ownership share and involvement in an Israeli company" (Motion at 1) and that it is "highly relevant" that this case "arises because of Mr. Broidy's decision to do business in Israel." *Id*. at 9. But that is not so. This case arises because of Haaretz's decision to defame Mr. Broidy, its decision to do so in English, and its decision to disseminate that defamatory publication in the United States, including in this District. The cases that Haaretz cites (*id.* at 9-10) for the proposition that an investor in a foreign company can be required to litigate fraud claims relating to a foreign investment in that foreign country are inapposite. Unlike such an investor who seeks monetary damages, a defamation plaintiff like Mr. Broidy has an overriding personal interest not just in

recovering damages but also in vindicating his or her reputation in the community where he or she lives and works.  Thus, for example, *Core Software Tech., Inc. v. ImageSat Int'l N.V.*, No. 08 CIV. 7017 (DC), 2010 WL 21173 (S.D.N.Y. Jan. 5, 2010), cited by Haaretz for the contention that a plaintiff investing in Israel warranted requiring the investor to litigate its claims there, is nothing like this case.  There, unlike here, plaintiff was not suing in their home forum, there was a lawsuit already pending in Israel with different plaintiffs against the same defendants based on substantially similar claims, and the claims at issue (breach of contract, breach of fiduciary duties, and corporate misconduct) stemmed directly from the investment itself.

Moreover, Florida courts have an overriding public interest in providing a local forum to a Florida resident for vindicating his reputation.  Contrary to Haaretz's assertion, the Israeli courts do not have any particular interest at all in Mr. Broidy's reputation, let alone a "much greater interest" (*id.* at 16) in this defamation case than courts in the jurisdiction where Mr. Broidy lives, works, and has been injured by Haaretz's defamation.  And, as the courts in this country regularly hold, the jurisdiction where the injury from torts—such as defamation—occurs has by far the greatest interest in adjudicating such disputes.  *See, e.g.*, *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1324 (M.D. Fla. 2010) ("states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents"). *See also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000) ("the United States courts have an interest in adjudicating matters affecting its residents").

Haaretz also asserts (Motion at 15) that this case will hinge upon Israeli corporate issues governed by Israeli corporate law, but this case at its crux is about adjudicating a defamation claim under Florida law that will turn on findings related to falsity, fault, and damages as to statements made by Haaretz about Mr. Broidy—not on adjudicating KOIOS's internal affairs.  Any ancillary

corporate questions are limited to one or two discrete and straightforward issues—*e.g.*, the nature of Mr. Broidy's interest in KOIOS—and can be easily addressed, if necessary, through expert evidence (such as the declaration Haaretz submitted with the Motion) without converting this case into a full-blown Israeli corporate law dispute. U.S. courts regularly manage foreign law issues, where necessary, through expert declarations, and this Court can easily do so here, if and when necessary. *See Implamed-Implantes Especializados, Comercio, Importacao E Exportacao Ltda. v. Zimmer, Inc.*, No. 06-21444, 2007 WL 9703128, at *2 (S.D. Fla. May 25, 2007) ("a court determines foreign law as a question of law, and may consider any relevant material or source, including expert testimony, in determining foreign law").

Moreover, while Haaretz refers to docket congestion in this District, its own reporting suggests that congestion in the Israeli court system is at least an equally serious problem. *See* "Israeli Court System Under Major Strain From Rising Cases and Judge Shortage, Report Finds," www.haaretz.com/israel-news/2023-08-29/ty-article/.premium/israeli-court-system-under-major-strain-from-rising-cases-and-judge-shortage-report-finds/0000018a-3d98-dc3d-ab8f-bfdcdd670002) ("With an estimated million cases a year and fewer than 800 judges, the backlog is huge, official figures show – and High Court petitions say the coalition is making the problem worse").

Haaretz attempts to repeatedly invoke the "Qatargate" controversy in Israel and Israel's subsequent law enforcement investigation thereof to distract from the real issues at hand. This case is a single-plaintiff, single-defendant, single-cause-of-action defamation case about Haaretz's false statements concerning Mr. Broidy's purported knowledge of, and involvement in, Qatargate. This case has nothing to do with Qatargate *per se* beyond Haaretz's defamatory statements falsely implicating Mr. Broidy therein.

15

Accordingly, the cases that Haaretz cites in purported support of the Motion are far afield from this case and inapposite. In *Foshee v. Banks*, No. 22-11321, 2022 WL 17547200 (11th Cir. Dec. 9, 2022) and *Tagger v. Strauss Grp. Ltd.*, No. 18-CV-2923 (BMC), 2018 WL 4356725 (E.D.N.Y. Sept. 12, 2018), unlike here, the allegedly actionable conduct and harm occurred within the foreign jurisdiction while the plaintiff was there. *Tazoe*, 631 F.3d 1321 arose from a foreign jurisdiction's worst aviation disaster and involved nearly all foreign plaintiffs. *See also Leon*, 251 F.3d 1305 (conduct and harm stemming from a plane crash occurred entirely in the foreign jurisdiction). In *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97 (1st Cir. 2009), the plaintiff had specifically dismissed a prior action litigated for years in the foreign jurisdiction on the same basis so that it could refile in the United States, which the court found was done to vex and oppress the defendant. In *Clerides*, 534 F.3d 623, the conduct and harm from a plane crash occurred entirely in the foreign jurisdiction, involved foreign citizens for plaintiffs, and foreign proceedings were already ongoing. *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207 (S.D. Fla. 2021) was a slip-and-fall personal injury case against a defendant that did not own or operate the premises, and the claim arose from conduct and harm entirely within a foreign jurisdiction. *See also McLane v. Marriott Int'l, Inc.*, 960 F. Supp. 2d 1351 (S.D. Fla. 2013) (another personal injury case where the conduct occurred and harm suffered entirely within a foreign jurisdiction). In *Montgomery v. Oberti*, 945 F. Supp. 2d 1367 (S.D. Fla. 2013), all of the conduct and harm stemming from a sexual battery occurred at a resort in a foreign jurisdiction; *see also S.R.J. v. Marriott Int'l, Inc.*, No. 2:21-CV-1863, 2022 WL 11306888 (W.D. Pa. Oct. 19, 2022) (another case stemming from a sexual battery in a foreign jurisdiction's resort, plus the plaintiff, while a U.S. citizen, had been living abroad for many years and so received less deference for her forum choice). In *Conflict Kinetics, Inc. v. Goldfus*, 577 F. Supp. 3d 459 (E.D. Va. 2021), the alleged

tort took place entirely in a foreign jurisdiction, where the plaintiff had already commenced a separate action.  In *Israel Disc. Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651 (C.D. Cal. 2007), both parties were foreign citizens, and the dispute was predicated upon pre-existing foreign judgments related to a foreign transaction.  In *Path to Riches, LLC on behalf of M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*, 290 F. Supp. 3d 280 (D. Del. 2018), the plaintiff, although a U.S. corporation, was bringing direct and derivative claims on behalf of a foreign company.

Haaretz also cites plainly inapposite aircraft crash cases, including *In re Air Crash Over S. Indian Ocean*, 352 F. Supp. 3d 19 (D.D.C. 2018), where the conduct, crash, and harm occurred overseas and the plaintiffs were foreign citizens. *See also Shu v. Wang*, No. CV 10-5302 (JMV), 2016 WL 6080199 (D.N.J. Oct. 17, 2016) (plaintiffs were foreign citizens); *D'Onofrio v. Il Corriere Della Sera*, 373 F. Supp. 2d 555 (E.D. Pa. 2005) (plaintiff lived in the foreign forum at the time of the conduct, which all took place in the foreign forum); *Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376 (S.D.N.Y. 2006) (all but one plaintiff had stipulated to the dismissal of their claims, leaving the only plaintiff as a non-resident of the forum); *Philipps v. Metro. Prop. & Cas. Ins. Co.*, No. 07-20766-CIV, 2007 WL 9702710 (S.D. Fla. June 22, 2007) (action related to a fatal car accident took place in the foreign forum where the defendant resided and foreign law governed, while the plaintiff resided in a different state from where the case was filed).

Even assuming that Israel is an available and adequate forum (which it may well not be on account of, among other things, the inherent biases and prejudices Mr. Broidy would face before the Israeli judiciary, as described above), that still would not cure the undue inconvenience and prejudice that Mr. Broidy would suffer if this Court forced him to litigate overseas, including, but

not limited to, extensive travel,[12] increased costs, and the elevated security risks and instability across the broader Middle East region.

Having launched this attack on a Florida resident and refused to properly correct its defamatory statements—most of which Haaretz continues to circulate—Haaretz should not be heard to argue that Mr. Broidy is not entitled to vindicate his reputation in the country, state, and district where he lives and works and where the reputational harm to him has been and continues to be focused.  Haaretz has not come close to carrying its heavy burden to overcome the strong presumption in favor of Mr. Broidy's preferred choice of his home forum as a U.S. citizen.

## IV.    CONCLUSION

Haaretz has failed to meet its heavy burden to overcome the strong presumption in favor of Mr. Broidy's home forum.  The private and public interest factors do not tilt at all—let alone decisively—towards Israel.  For each of these reasons, Mr. Broidy requests this Court deny the Motion.

---

[12] *See Gross v. Brit. Broad. Corp.*, 386 F.3d 224, 233 (2d Cir. 2004) ("the burden of litigating abroad is likely a greater obstacle to an individual than to a large business corporation").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2026, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to:  to **Deanna K. Shullman**, **Esq.,** Shullman Fugate PLLC, 2101 Vista Parkway, Suite 4006, West Palm Beach, FL 33411,  dshullman@shullmanfugate.com  and  pleadings@shullmanfugate.com, **Yelan Escalona, Esq.,** Shullman Fugate PLLC, 201 S. Biscayne Blvd., 28th Floor, Miami, FL 33131, vescalona@shullmanfulgate.com,  *Counsel for Defendant,* **Nathan Siegel, Esq.**, **Marietta Catsambas, Esq., and Ryan Hicks, Esq.,** Davis Wright Tremaine LLP, 1301 K Street NW, Suite 500, Washington, DC 20005, nathansiegel@dwt.com, mariettacatsambas@dwt.com, and ryanhicks@dwt.com. *Co-Counsel for Defendant*,

BARTLETT LOEB HINDS
THOMPSON & ANGELOS

/s/ *Edward Colin Thompson*
ETHAN J. LOEB
Fla. Bar No.: 0668338
EDWARD COLIN THOMPSON
Fla. Bar No.: 0684929
1001 Water Street, Suite 475
Tampa, Florida 33602
Phone: (813) 223-3888
Fax: (813) 228-6422
EthanL@BLHTlaw.com
KerriR@BLHTlaw.com
Eservice@BLHTlaw.com
ColinT@BLHTlaw.com
HeatherW@BLHTlaw.com

HERSCHMANN BENSON
BOWEN LLP

DANIEL R. BENSON
NY Bar No.: 1712223
RYAN A. BERGER (*pro hac vice* forthcoming)
NY Bar No.: 5573118
305 Broadway FL 7
New York, NY 10007-1188
Phone: (917) 341-4628
DBenson@hbb-firm.com
RBerger@hbb-firm.com

*Attorneys for Plaintiff Elliott Broidy*

19