**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 25-81295-CIV-CANNON**

**ELLIOTT BROIDY,**

Plaintiff,

v.

**HAARETZ DAILY NEWSPAPER LTD.,**

Defendant.
_________________________________/

## ORDER GRANTING DEFENDANT'S AMENDED MOTION TO DISMISS PURSUANT TO THE DOCTRINE OF FORUM NON CONVENIENS

**THIS CAUSE** comes before the Court upon Defendant's Amended Motion to Dismiss Plaintiff's Complaint pursuant to the doctrine of forum non conveniens ("Motion to Dismiss" or "Motion") [ECF No. 42]. The Court has reviewed the Motion to Dismiss, Plaintiff's Opposition [ECF No. 46], Defendant's Reply [ECF No. 47], Plaintiff's Complaint [ECF No. 1], and the full record pertinent to the instant Motion [*see* ECF Nos. 43–46]. Fully advised in the premises, Defendant's Motion to Dismiss [ECF No. 42] is **GRANTED**.

## RELEVANT BACKGROUND[1]

Plaintiff Elliott Broidy is a Florida businessman who has devoted significant portions of

[1] "In reviewing a motion to dismiss for forum non conveniens, [courts] accept as true the factual allegations in the complaint to the extent they are uncontroverted by affidavits or other evidence, or have not been challenged in the context of an evidentiary hearing. [Courts] also draw all reasonable inferences in favor of the plaintiffs." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020). Neither side disputes consideration of the full record associated with the Motion, including the various exhibits/affidavits filed by the parties [ECF Nos. 43–46]. Nor is there any identifiable contradiction between the allegations in the Complaint and the supporting exhibits on the issues that matter for purposes of resolving the Motion, that is, Plaintiff's registration as a user on Haaretz.com, the Terms and Conditions associated with the website, and the publication of the allegedly defamatory material on the website.

his time to foreign policy advocacy [ECF No. 1 ¶ 1]. This advocacy work, including his litigation against the State of Qatar and its agents, attracts widespread attention and forms a significant part of his reputation and standing within his community here in Florida [ECF No. 1 ¶ 1]. Plaintiff's work, however, is not without its critics. Defendant Haaretz Daily Newspaper Ltd. is an Israeli media corporation that operates news services in both Hebrew and English [ECF No. 1 ¶¶ 11, 15]. According to Plaintiff, on September 1, 2025, Defendant published an article entitled "Elliot Broidy, anti-Qatar GOP Fundraiser Pardoned by Trump, Is Secret Partner in Firm Behind pro-Qatar Campaign" [ECF No. 1 ¶¶ 2, 14]. The article contended that Plaintiff was a "secret partner" in a firm called KOIOS [ECF No. 1 ¶ 19], described in the article as an entity subject to an ongoing, widely publicized criminal investigation and prosecution in Israel for its allegedly pro-Qatari PR campaign there [ECF No. 1 ¶ 14]. By linking Plaintiff to the pro-Qatari operation, the article portrays Plaintiff as a hypocrite who secretly profits from Qatari money while simultaneously maintaining a publicly anti-Qatar stance [ECF No. 1 ¶¶ 1–2, 14].

As alleged by Plaintiff and accepted as true for purposes of this Motion, the article is deliberately and egregiously false [ECF No. 1 ¶¶ 1–2, 14]. While Plaintiff freely admits that he was a minority shareholder in KOIOS, he contends that he never had any role in its operations [ECF No. 1 ¶ 17]. Plaintiff states that he was never aware of KOIOS's role in the PR campaign, never saw any revenue from it, and learned about the scandal only when it was reported in the press [ECF No. 1 ¶¶ 3, 17]. Furthermore, Plaintiff contends that all of the evidence available to Defendant in reporting on this story, and indeed all of the evidence that exists on this topic, provides only one possible interpretation: Plaintiff was defrauded by the founders of KOIOS while

being kept out of the loop on KOIOS's illicit operations [ECF No. 1 ¶ 18].[2]

To make matters worse, according to Plaintiff, not only did Defendant publish the article in Israel on its Hebrew-language website, but Defendant also posted a translated (and apparently more misleading) version of the article on its English website, Haaretz.com [ECF No. 1 ¶¶ 15–16]. According to Plaintiff, Defendant created this English-language translation—the subject of the Complaint—for the express purpose of ensuring that it would be read in Florida, and thereby damage Plaintiff's reputation in Florida, including within Florida's large Jewish community that regularly reads Defendant's English-language website and of which Plaintiff is a part [ECF No. 1 ¶¶ 16–17]. When Plaintiff alerted Defendant to the false nature of the claims made in the article, Defendant made only minor, cosmetic changes to it while leaving the defamatory substance in place [ECF No. 1 ¶¶ 4–5, 7, 19–20, 22].

In response, Plaintiff initiated this action on October 20, 2025 [ECF No. 1]. The Motion to Dismiss is ripe for adjudication [ECF Nos. 42, 46–47].

## LEGAL STANDARDS

"Forum non conveniens is a flexible, common law doctrine that provides a district court with inherent power to decline to hear a case in which there is proper jurisdiction and venue." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1085 (11th Cir. 2024). "[A] successful forum non conveniens motion . . . results in dismissal." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1296 (11th Cir. 2021). Traditionally, "[a] defendant bears the burden of justifying dismissal based on forum non conveniens, and to satisfy this burden it must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of

---

[2] The article also suggests that Plaintiff illegally promoted the interests of the UAE and Saudi Arabia; Plaintiff contends these claims are similarly false and defamatory [ECF No. 1 ¶¶ 6, 21].

dismissal, and (3) the plaintiff can reinstate his or her suit in the alternative forum without undue inconvenience or prejudice." *Usme*, 106 F.4th at 1085 (alterations adopted) (quotation omitted).

In cases with a valid, enforceable forum-selection clause, however, "the forum non conveniens analysis is modified in three consequential ways." *Id.* at 1086. First, "the plaintiff's choice of forum merits no weight," and instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that dismissal for forum non conveniens is unwarranted." *Id.* (quotation omitted). Second, "a court should not consider arguments about the parties' private interests and must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* (quotation omitted). Third, "a court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right, and this in turn may affect the public-interest considerations." *Id.* (quotation omitted). Consequently, "the existence of a valid and enforceable forum-selection clause is essentially dispositive in the forum non conveniens analysis." *Id.*

"[W]hen tasked with analyzing a forum-selection clause, a court must follow a two-step approach: (1) the court first must interpret the clause to assess whether its terms apply to the claims and parties at bar; if they do, then (2) the court must decide whether the forum-selection clause is valid and enforceable based on *The Bremen* factors." *Declan Flight, Inc. v. Textron Eaviation, Inc.*, 177 F.4th 1110, 1124 (11th Cir. 2026). Whether the claims at issue are subject to a forum-selection clause is a question of "scope" determined by "looking to the language of the contract itself" subject to "Florida's choice-of-law rule to apply the contracts' 'choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'" *Id.* at 1124, 1131 (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)). If the forum-selection clause applies to the claims at issue, a court will refuse to enforce it only where

"(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *AQuate II LLC v. Myers*, 100 F.4th 1316, 1323 (11th Cir. 2024) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

**DISCUSSION**

Defendant asks the Court to dismiss this action under the doctrine of forum non conveniens because (1) a valid, enforceable forum-selection clause between the parties mandates Israel, not Florida, as the proper forum for the resolution of Plaintiff's defamation claim [ECF No. 42 pp. 24–27; ECF No. 47 pp. 11–15], and (2) even if the forum-selection clause does not apply, the traditional forum non conveniens analysis strongly supports dismissal of this federal action so the case can be litigated in the proper Israeli forum [ECF No. 42 pp. 13–23; ECF No. 47 pp. 6–11]. Plaintiff opposes the Motion in all respects [ECF No. 46]. In particular, Plaintiff argues that Defendant waived its right to invoke the forum-selection clause, the clause does not apply to Plaintiff's defamation claim, and the clause is otherwise unenforceable [ECF No. 46 pp. 21–26]. Similarly, Plaintiff contends that Defendant fails to justify dismissal under a traditional forum non conveniens analysis [ECF No. 46 pp. 15–21].

For the reasons set forth below, the Court agrees with Defendant that the forum-selection clause at issue here applies to Plaintiff's defamation claim and is otherwise valid. In light of the valid agreement, Plaintiff, as the party challenging the forum-selection clause, bears the burden to show that dismissal is unwarranted on public policy grounds and has failed to do so. Consequently, the Court grants Defendant's Motion to Dismiss pursuant to the doctrine of forum non conveniens.

**I. Plaintiff's single defamation claim falls within the scope of the forum-selection clause**.

Defendant argues that the forum-selection clause between the parties mandates dismissal of Plaintiff's defamation claim in the Complaint [ECF No. 42 pp. 24–27]. In support, Defendant offers an undisputed affidavit from its CEO that shows Plaintiff registered as a user on Defendant's English-language website, Haaretz.com, in February 2024 [ECF No. 43 ¶ 10; ECF No. 43-1 p. 2]. As part of the registration process, Plaintiff clicked a box indicating that he had "read and agreed to Haaretz's terms and conditions," which contained a blue hyperlink to the full Terms and Conditions of registering with the site [ECF No. 43 ¶ 11]. Paragraph 92 of the full Terms and Conditions contains the forum-selection clause at issue here:

> The competent court in Tel Aviv shall have exclusive jurisdiction in any matter or dispute, relating to the Content, publications, or use of the Site and/or the Applications, including the Services provided in connection with the Site, and it will hear the matter according to the laws of the State of Israel. The User agrees that the international choice of law provisions and/or rules shall have no application, and therefore, in any event, no judicial hearing will take place outside the borders of the State of Israel

[ECF No. 43 ¶ 13; ECF No. 43-3 ¶ 92].[3]

On the basis of that language, Defendant argues as follows: (1) Plaintiff's defamation claim "relate[s] to the Content, publications, or use of the Site" because it challenges the "Content" of a "publication" on Haaretz.com; and (2) the forum-selection clause thus mandates litigation in Israel [ECF No. 42 pp. 24–25]. Plaintiff disputes this reasoning, asserting that Defendant is stretching the Terms and Conditions outside of their proper context [ECF No. 46 pp. 24–25]. This is so,

[3] Plaintiff does not challenge the authenticity of the Terms and Conditions in place at the time of Plaintiff's registration and as attached by Defendant in support of the Motion to Dismiss [ECF No. 43-3; ECF No. 43 ¶ 13 (affirming authenticity of attached copy of Terms and Conditions)]. Nor does Plaintiff contest that he registered as a user on Haaretz.com and checked a box affirming that he read and agreed to the Terms and Conditions when doing so [*see* ECF No. 46 pp. 21–26; ECF No. 43-1 (proof of registration); ECF No. 43-2 (screenshots of registration process and box to check with accompanying language)].

Plaintiff contends, because the Terms and Conditions are limited to governing "browsing and use of the site" and do not cover a claim, like the one here, alleging an independent tort related to publishing defamatory material on the site [ECF No. 46 p. 24; *see* ECF No. 43-3 p. 2 ("Browsing and use of the site is subject to compliance with all the terms and conditions under these Rules:"); ECF No. 43-3 ¶ 1 ("These Rules set out the terms of use governing the site, Haaretz.com and of its various editions and platforms, including mobile applications (hereinafter, the 'Site').")].

Whether the forum-selection clause reaches Plaintiff's defamation claim is a question of contract interpretation. *See Declan Flight*, 177 F.4th at 1122. Because Florida's choice-of-law rules require courts to apply the contract's choice-of-law provisions, *see id.* at 1131, the Court must interpret the Terms and Conditions as a court of competent jurisdiction in Israel would [*see* ECF No. 43-3 ¶ 92 (noting that disputes are to be determined "according to the laws of the State of Israel")]. In other words, if an Israeli court would determine that a defamation claim falls within the scope of the forum-selection clause, this Court must decide the same regardless of how a Florida court would interpret the same contract.[4]

In Israel, contracts are interpreted according to the general part of the Contracts Law. § 25 Contracts (General Part) Law; *see Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 711 (S.D.N.Y. 2002). According to the Contracts Law, courts are first to follow the manner of interpretation set by the contract itself, and where a contract is unclear about an interpretive question, courts should

---

[4] That said, the difference between Florida law and Israeli law on this question appears minor or nonexistent in this context. As this Order goes on to explain, Israeli courts seek to interpret contracts according to the parties' intent as codified by the plain language of the contract. *See* § 25 Contracts (General Part) Law, 5733–1973, as amended (Isr.). Florida law operates in the same way. *See Robbinson v. Cent. Props., Inc.*, 468 So. 2d 986, 988 (Fla. 1985). Consequently, because the Court reaches its result in this case by applying a plain reading of the forum-selection clause in the context of the entire Terms and Conditions, the Court's disposition of Defendant's Motion [ECF No. 42] would be the same even under Florida law alone.

construe the entire agreement according to the intent of the parties as expressed by the contract's plain language. *See* § 25 Contracts (General Part) Law.[5] Here, the Terms and Conditions provide, in relevant part, that "[t]he User agrees that these Rules shall not be interpreted narrowly against the Company, inter alia in view of the frequent changes relating to the internet and the Company's reliance on these Rules" [ECF No. 43-3 ¶ 94].

With this context in mind, the Court agrees with Defendant that Plaintiff's defamation claim falls within the scope of the ordinary meaning of the forum-selection clause as stated in the Terms and Conditions. A starting point here is the ordinary meaning of the terms "any" and "relating to" as used in the clause, specifically in the phrase "*any* matter or dispute, *relating to* the Content, publications, or use of the Site and/or the Applications, including the Services provided in connection with the Site" [ECF No. 43-3 ¶ 92 (emphasis added)]. This formulation is clearly broad and capacious, and it covers exactly what it says: *any* dispute *relating to* the Content of the Site. These are decidedly expansive terms, as the Supreme Court has repeatedly recognized. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of these words [referring to 'relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" (quoting Black's Law Dictionary 1158 (5th ed. 1979))); *Amerijet Int'l, Inc. v. Miami-Dade Cnty., Fla.*, 627 F. App'x 744, 747 (11th Cir. 2015) ("The term related to has a broad scope and an expansive sweep." (quotations omitted)); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (canvassing

---

[5] The authoritative versions of Israeli statutes are in Hebrew. *See* The Law Library of Congress, Global Legal Research Directorate, *Translation of National Legislation into English* 19 (2012). The parties did not provide their own translation of the Contracts Law, but the Court is permitted to "take judicial notice of authoritative statements of foreign law." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004). For the purposes of this Order, the Court relied on the translation of the Contracts Law provided by IsraeliLegislation.com.

authorities and emphasizing expansive meaning of the word "any") (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997), and *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 584 (1980)). Also expansive is the word "including" in the clause as quoted above, which is a term of enlargement—not limitation—and which as used here provides further evidence that the forum-selection clause covers a broad universe of matters relating to the Content on the site, not just a user's physical use of the technical website itself, as intimated by Plaintiff in the Opposition [ECF No. 46 pp. 24–25]. *See, e.g.*, *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) (explaining that "including" "emphasizes the fact that that which is within is meant simply to be illustrative"); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (explaining that terms like "'including' . . . indicate the 'illustrative and not limitative' function of the examples"); *United States v. Hastie*, 854 F.3d 1298, 1304 (11th Cir. 2017). Plaintiff offers no meaningful rebuttal to the breadth of the ordinary meaning of these terms; nor can the Court discern any textual reason to limit them only to a user's physical interaction with the technical aspects of the site [*see* ECF No. 46 pp. 24–25 (urging Court to interpret forum-selection clause as reaching only technical disputes related to the services on the website)].

Bound by the ordinary meaning of the forum-selection clause, the pertinent question follows: does Plaintiff's claim of defamation have some bearing or connection to the "Content, publications, or use of the Site"? The answer here is clearly yes. As everyone agrees, Plaintiff's dispute relates to an allegedly defamatory article published on Defendant's website [ECF No. 1 ¶ 1 ("This action arises from an egregiously false and defamatory article defendant Haaretz published, and continues to publish online.")]. The dispute, therefore, clearly concerns a "publication[]" on the site [ECF No. 43-3 ¶ 92]. And even if the article does not qualify as a

"publication," at the very least it constitutes "Content" on the website within the plain meaning of the forum-selection clause.

Plaintiff's only textual pushback to this position is to focus on a separate portion of the Terms and Conditions, specifically Paragraph 1. Paragraph 1, contained within a "General" section of the Terms and Conditions, states as follows, in pertinent part: "These Rules set out the terms of use governing the site, Haaretz.com and of its various editions and platforms, including mobile applications (hereinafter, the 'Site')" [ECF No. 43-3 ¶ 1]. Plaintiff reads that provision to narrow the forum-selection clause to cover only disputes regarding the physical or technical use of the site itself [ECF No. 46 pp. 24–25]. The Court disagrees and declines to read the forum-selection clause any differently than its broad terms require. Paragraph 1 describes the overall function of the Terms and Conditions—to "set out the terms of use governing the site"—but it does nothing to restrict or narrow the broad language used in the forum-selection clause, which as stated, covers "*any* matter or dispute, *relating to* the Content, publications, or use of the Site and/or its Applications . . . ." [ECF No. 43-3 ¶ 92 (emphasis added)]. Nor is there any tension or incompatibility between Paragraph 1 and the forum-selection clause; Paragraph 1 simply indicates that a user, by agreeing to use the site, is agreeing to the terms of use governing the site, with the forum-selection clause being one such term. Putting this together, a user of Haaretz.com agrees to all the rules of the site, including the forum-selection clause, which speaks for itself in its breadth and reach, for the reasons already stated.

Other provisions of the Terms and Conditions further undermine Plaintiff's position, specifically, Paragraph 98 and Paragraph 94. Paragraph 98 declares to users that "use of the Site is subject to and contingent on the consent of the User to the provisions of these Rules," which again directs users to the full set of Rules (of which the forum-selection clause is a part) [ECF No.

43-3 ¶ 98]. And then there is Paragraph 94, which expressly tells users that the Terms and Conditions "shall not be interpreted narrowly against the Company" [ECF No. 43-3 ¶ 94]. Viewing all of this in context, a reasonable reader who consents to the Terms and Conditions, as Plaintiff did here, is left with no other conclusion except that he is agreeing to a broad forum-selection clause that captures "any matter or dispute[] relating to the Content . . . of the Site," including, for purposes of this case, a defamation claim based on information published on that site.

Plaintiff's remaining scope arguments—that the applicability of the clause depends upon the nature of the tort alleged by Plaintiff and that the clause should not apply to this case because its interpretation will not resolve his claim on the merits [ECF No. 46 pp. 24–25]—are better styled as questions of enforceability, not interpretation. These arguments nevertheless fail for the reasons stated below.

**II. The forum-selection clause is enforceable and mandates dismissal**.

Having established that Plaintiff's defamation claim falls within the scope of the broad forum-selection clause, the Court next evaluates whether there is any basis under the applicable *Bremen* factors to decline to enforce the clause. *See Declan Flight*, 177 F.4th at 1124; *The Bremen*, 407 U.S. at 18; *see also AQuate II*, 100 F.4th at 1323 (clarifying factors). Plaintiff raises a host of arguments on enforceability, starting with an assertion that Defendant has waived reliance on the forum-selection clause [ECF No. 46 pp. 22–24], then asking the Court to invent new tests on enforceability [ECF No. 46 pp. 24–25], before finally characterizing the formation of the clause as "induced by . . . overreaching" and thereby in violation of *Bremen* [ECF No. 46 pp. 25–26 (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009))]. *See AQuate*

*II*, 100 F.4th at 1323. The Court agrees with Defendant that the clause is enforceable and mandates dismissal of this action in favor of litigation in Israel.

As a preliminary matter, Defendant has not waived its ability to rely on the forum-selection clause. A party waives its right to invoke a forum-selection clause when it "substantially participated in the litigation to a point inconsistent with an intent to enforce the forum selection clause" considering the "totality of the circumstances." *Se. Power Grp., Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 535–36 (11th Cir. 2021). Defendant's conduct in this action exhibits nothing close to a waiver. Even though the issue of the forum-selection clause itself was first briefed in the instant Motion, Defendant has objected to Plaintiff's choice of forum since it first appeared in the action [*see, e.g.*, ECF No. 8 (Defendant's Motion to Dismiss for Lack of Personal Jurisdiction); ECF No. 11 (Defendant's First Motion to Dismiss for Forum Non Conveniens)]. Further, Defendant raised the clause as soon as it became aware that Plaintiff had registered as a user on its website [ECF No. 39]—not, as Plaintiff claims, upon discovery of a "clause buried" within its Terms and Conditions [ECF No. 46 p. 21]. Bottom line, there is no reason on this record to find a waiver of an otherwise enforceable forum-selection clause. *See Ekpo v. Playa Mgmt. USA, LLC*, No. 21-CV-2089, 2023 WL 3397393, at *2 (N.D. Ga. May 11, 2023) (enforcing forum-selection clause against waiver challenge where motion was filed two years into the case and after a Rule 12 motion had been denied); *Zamber v. Am. Airlines, Inc.*, No. 16-23901-CV, 2020 WL 1445479, at *2 (S.D. Fla. Feb. 11, 2020) (enforcing forum-selection clause against waiver challenge after adjudication of motion to dismiss for lack of jurisdiction).

Separately, Plaintiff invites the Court to invent a new test for enforcement of forum-selection clauses whereby "the applicability" of such a clause "arising from a contractual relationship between the tortfeasor and the injured party depends upon the tort arising out of that

relationship" [ECF No. 46 p. 24]. Likewise, Plaintiff formulates a confusing gloss on the law whereby the applicability of a forum-selection clause should turn on whether resolution of the tort claims at issue relates to an interpretation of the contract [ECF No. 46 p. 25 (arguing that "nothing about the interpretation of Haaretz's Terms and Conditions will help resolve Broidy's defamation claim on its merits")]. These arguments are not supported by governing authorities. As always, the language of the contract determines whether a particular claim falls within its scope, and as discussed above, Plaintiff's defamation claim clearly falls within the scope of the clause. *See supra* Section I; *see also Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 559 (11th Cir. 2016) ("To determine if a forum-selection clause encompasses a particular type of claim, we look to its language."); *accord* § 25 Contracts (General Part) Law. The Court is not at liberty to engraft new requirements and/or limitations onto what is otherwise a clear forum-selection clause.

Finally, Plaintiff's argument that the forum-selection clause is unenforceable under the *Bremen* factors because the clause was "induced by . . . overreaching" fails as well [ECF No. 46 p. 25]. To determine whether a forum-selection clause is overreaching, courts examine whether the clause was "reasonably communicated to the consumer." *Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 926 (11th Cir. 2016); *see Krenkel*, 579 F.3d at 1281 (setting out test for whether a forum-selection clause was "induced by fraud or overreaching"). Plaintiff complains about a purported lack of notice, saying that he would have believed the Terms and Conditions to apply only to how users "access and navigate the website," not to lawsuits arising from content published on the website [ECF No. 46 p. 26; *see also* ECF No. 46 p. 26 (arguing that "nothing in the checkbox or anywhere else mentions Israeli jurisdiction or warns the registrant he is waiving his right to sue in a U.S. court")]. And like he did with respect to Paragraph 1 as discussed above, he draws support for this theory from an introductory phrase in the Terms and Conditions that says

this: "Browsing and use of the site is subject to compliance with all the terms and conditions under these Rules" [ECF No. 43-3 p. 2]. Plaintiff's theory is unpersuasive. For one, Plaintiff's argument presupposes a misreading of the opening line, which instead of stating that the agreement "governs" browsing and use of the site says that "[b]rowsing and use of the site is subject to compliance with all the terms and conditions under these Rules" [ECF No. 43-3 p. 1]. None of this is confusing or indicative of a lack of notice. Rather, based on the clear language and structure of the Terms and Conditions, a user is on notice that his use of the site is subject to all of the terms contained therein, including the forum-selection clause. Moreover, because Plaintiff could not register for the site without affirmatively clicking that he agreed to the full Terms and Conditions [ECF No. 43 ¶ 11], both the physical location of the clause and the fact that Plaintiff had an opportunity to become meaningfully informed of the clause before registering support the Court's conclusion that it was reasonably communicated to Plaintiff and thus not induced by overreaching.

As for the other three *Bremen* factors, all support enforcement of the forum-selection clause. *See AQuate II*, 100 F.4th at 1323 (citing *The Bremen*, 407 U.S. at 18). First, Plaintiff will not be "deprived of [his] day in court because of inconvenience or unfairness" resulting from a dismissal of this action in light of the forum-selection clause. *See AQuate II*, 100 F.4th at 1323. To the contrary, Defendant has affirmatively represented to the Court that it consents to jurisdiction in Israel and will waive any applicable statute of limitations should Plaintiff refile in Israel within six months of dismissal here [ECF No. 44 ¶ 24]. Second, Israeli law would not "deprive the plaintiff of a remedy," *see AQuate II*, 100 F.4th at 1323, because Defendant consents to process there and Israeli courts afford adequate remedies for defamation [ECF No. 44 ¶ 24; ECF No. 45 ¶¶ 17–20]. Third, enforcement of the instant forum-selection clause does not otherwise "contravene public policy." S*ee AQuate II*, 100 F.4th at 1323.

In sum, a valid forum-selection clause "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (alteration in original). This is not one of those exceptional cases. The forum-selection clause covers the dispute in this action and is valid and enforceable. Dismissal is warranted in favor of Israel as the proper forum.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Amended Motion to Dismiss [ECF No. 42] is **GRANTED**.
2. Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.
3. The Clerk is **DIRECTED** to **CLOSE** this case.

**ORDERED** in Chambers at Fort Pierce, Florida, this 30th day of October 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record